# JULIUS W. WOJAHN AND ANOTHER v. ANNA FAUL AND ANOTHER.[1]

April 9, 1954.

No. 36,216.

[1]Reported in 64 N. W. (2d) 140.

34

*Bergsten & Bergsten,* for appellants.
*Mahoney & Mahoney,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Action by plaintiffs, as grantees in a warranty deed conveying certain farm premises in Cottonwood county, against defendants, as grantors, to recover damages sustained by plaintiffs as the result of defendants' breach of an express warranty that plaintiffs should have quiet and peaceful possession thereof as of May 1, 1949. This case has been before us previously on an appeal from an order sustaining a demurrer to the answer (Wojahn v. Faul, 235 Minn. 397, 51 N. W. [2d] 97) ; and on application for habeas corpus in litigation arising out of the transaction tried in the district court of Cottonwood county (Wojahn v. Halter, 229 Minn. 374, 39 N. W.

[2d] 545). Reference to both decisions is made for a more complete statement of the facts.

Plaintiffs paid the sum of $24,000 for the premises comprising 160 acres with farm buildings thereon. The contract for deed covering the sale was made August 20, 1948, and the warranty deed delivered February 3, 1949. By its terms plaintiffs were to have possession effective May 1, 1949. On October 4, 1948, they were advised by Otto P. Halter, a tenant on the premises, that by oral agreement made with defendants July 2, 1948, his written lease, which expired April 30, 1949, had been extended to April 30, 1950, and that he intended to farm the premises in 1949.

Defendants denied they had extended Halter's lease and instructed plaintiffs and their counsel to institute proceedings in the district court of Cottonwood county, at defendants' expense, to enjoin Halter from interfering with plaintiffs' actions and work in the preparation of the land for the 1949 crop. These proceedings culminated in an order dated March 4, 1949, which provided:

"That the motion of the plaintiff for an injunction be, and the same hereby is, denied on condition that the defendant proceed to prepare the premises herein involved for the 1949 crop and seed said premises at his own expense for seed and labor for such crops as would be normally planted on said premises, all of said work to be done in a husband-like manner."

Defendants thereupon directed plaintiffs to institute a further action for possession at defendants' expense. Therein Julius W. Wojahn and Harry Faul were joined as plaintiffs against Otto P. Halter as defendant. It culminated in a stipulation dated May 4, 1949, executed by Julius W. Wojahn and Harry Faul and Otto P. Halter and their counsel, which provided:

"It is hereby stipulated and agreed by and between the parties herein that this cause of action be, and the same hereby is, dismissed with prejudice upon its merits and without costs or disbursements to either party by the plaintiffs paying to the defendant the sum of $1300.00, the receipt whereof is hereby acknowledged.

"That the defendant has the right to reside in the buildings upon said premises for one month from this date without rent, and has the right to keep his horses and cows in the pasture until he removes himself from said premises, and that within thirty days hereof the defendant is to remove himself, his family and all his belongings from the premises described in the complaint herein."

Wojahn and Faul agreed payment of the $1,300 was to be proportioned between them, Wojahn to pay $500 thereof and Faul the remaining $800. Wojahn testified that he agreed to pay his $500 "For the simple reason that there had been benefits. The renter had done the ploughing, and I had benefits, and I said, I wanted to pay for the benefits I had, and I would pay toward the settlement to get possession." Faul testified with reference thereto as follows:

"Q. Didn't you agree to pay eight hundred dollars?
"A. Sometime in that I agreed, but I don't know when."

Following this stipulation, Wojahn took possession of the farm with the exception of the buildings thereon and the pasturage consisting of approximately 30 acres. He later cultivated and retained the proceeds of the 1949 crop. At the time of the stipulation, he tendered Halter $500 thereon, while Faul promised to mail a draft for his $800 as soon as he returned to Minneapolis. Halter refused to accept the $500 or any less amount than the full $1,300 due him; but Faul at all times thereafter refused to forward the $800 which he was to pay. In consequence, Halter retained possession of the buildings and pasturage land and subsequently caused judgment on the stipulation to be entered against Wojahn and Faul. On November 17, 1950, after Faul had refused all demands for his portion thereof, Wojahn satisfied the judgment by payment of $1,412.02, which covered principal, interest, and costs thereon. On December 12, 1949, Halter surrendered possession of the buildings and the 30 acres of pasturage to Wojahn.

This action is to recover $752 paid by plaintiffs for attorney's fees and costs in the various proceedings required to obtain possession; $725, the reasonable rental value of the buildings and 30 acres of pasturage retained by Halter from May 1, 1949, to December 12,

1949; and $1,412.02 paid in satisfaction of the judgment described. The jury returned a verdict for the full amount of all claims, plus interest. This is an appeal from the whole of an order denying defendants' subsequent motion for judgment notwithstanding the verdict or a new trial.

On appeal defendants assert (1) they are not liable for attorney's fees nor the costs of litigation in the actions instituted by plaintiff in that (a) they did not authorize such actions and (b) they were prematurely instituted prior to the date plaintiffs were entitled to possession; (2) the award of $725 as the reasonable rental value of the buildings and 30 acres retained to December 12, 1949, is not supported by the evidence; and (3) the evidence does not sustain a finding that they were liable for any part of the judgment paid by plaintiffs.

■ There is sufficient evidence to support a finding that the actions were instituted upon the specific direction of defendant Harry Faul and that he had agreed to pay all attorney's fees and expenses incurred therein. Wojahn testified directly to such effect. An affidavit of one of the attorneys of record in the prior proceedings received as part of the files therein corroborates it. A letter from Faul to counsel Lienke & Mann therein directed that they "go ahead and prepare the necessary papers to make Otto Halter show cause why Mr. Wojahn cannot enter the property." His execution of the stipulation for settlement indicates acquiescence to his role as plaintiff therein.

Under the terms of the warranty, it was incumbent upon him to deliver possession by May 1, 1949. Failure to do so would result in plaintiffs' loss of the 1949 crop for which defendants would be responsible to plaintiffs. Even had there been no agreement, the expenses incurred by plaintiffs in gaining possession, after defendants' failure to deliver it to them, would clearly have been the obligation of defendants. Bergquist v. Kreidler, 158 Minn. 127, 196 N. W. 964; Fritz v. Pusey, 31 Minn. 368, 18 N. W. 94; Annotations, 105 A. L. R. 737 and 61 A. L. R. 161.

Testimony was presented that plaintiffs had paid $752 for legal services and costs in gaining possession and establishing their

rights to the property and that in plaintiffs' opinion the sums thus paid appeared just and reasonable. The complete files in both proceedings were submitted in evidence and clearly indicated that a substantial amount of legal services, including the preparation of pleadings, motions, and other lengthy documents as well as numerous court appearances, were required in connection therewith. Defendants presented no testimony that the amounts paid therefor were unreasonable or excessive. While no expert testimony was submitted as to the reasonable value of the same, we have held that the absence of such evidence does not nullify an award therefor. See, Vanderburgh v. Vanderburgh, 152 Minn. 189, 188 N. W. 276; Kingsley v. Anderson, 103 Minn. 510, 115 N. W. 642, 116 N. W. 112. There is no requirement that a jury award for attorney's fees must be based on expert testimony. See, Morris v. Wulke, 141 Minn. 27, 169 N. W. 22; Olson v. Gjertsen, 42 Minn. 407, 44 N. W. 306.

The fact that these actions were instituted prior to May 1, 1949, the date upon which plaintiffs were actually entitled to possession, would not invalidate the claim for expenses incurred therein. The evidence indicates that they were instituted at such times upon the specific directions of Harry Faul. Had they been instituted subsequent to May 1, 1949, it is quite probable that plaintiffs would have completely lost the 1949 crop, and that, in consequence, defendants, who would be ultimately liable to them therefor, would have suffered substantial additional damages. Knowing of the tenant's claim, the plaintiffs were under a duty to mitigate the damages which might follow defendants' breach of the warranty deed. 5 Dunnell, Dig. (3 ed.) § 2532.

■ The evidence is sufficient to support the award of $725 as the reasonable rental value of the structures and the 30 acres retained by Halter for approximately seven months. Plaintiff Julius W. Wojahn testified that the reasonable rental value of the structures at the time when there was a critical housing shortage in nearby Windom was the sum of $50 per month, or a total of $350. As owner of the premises, he was qualified to express his opinion with reference thereto. He submitted further testimony that he had engaged in farming for many years in this locality and that the land retained

by the tenant, separate and apart from the structures thereon, in his opinion, was reasonably worth $12.50 per acre, or $375, for the total period during which he was deprived of possession thereof. Defendant Harry Faul submitted evidence that the lease of such acreage called for payments of only six dollars per acre for the season. The evidence on this issue being conflicting, it was for the jury to properly resolve doubts with reference thereto and, having done so, its determination cannot be disturbed here. Becker v. Thomson, 208 Minn. 332, 294 N. W. 214.

■ With reference to the $1,412.02 paid by plaintiffs in satisfaction of the judgment, we are of the opinion that at the most plaintiffs were entitled to recover only eight-thirteenths thereof, representing the portion which defendants had agreed to pay. It is well settled that, where one of several parties jointly and severally liable on a judgment pays more than his share thereof, he is entitled to contribution from his joint judgment debtors as reimbursement for the excess thus paid. Smude v. Amidon, 214 Minn. 266, 7 N. W. (2d) 776; 4 Dunnell, Dig. (3 ed.) § 1920. The amount of contribution as between the parties is determined by their liabilities *inter se.* Thus, where they are jointly and severally liable to a third party but as between themselves one's liability is greater than that of the other, the one discharging the whole obligation may recover from the joint debtor the latter's agreed portion thereof.

The jury's verdict indicates that it awarded plaintiffs the full $1,412.02 paid by them to satisfy the judgment. We believe this was error and, for the reasons outlined, the original award should be reduced by the sum of five-thirteenths of $1,412.02 paid, or $543.08, plus the interest awarded thereon of $49.42, or a total reduction of $592.50.

■ Counsel for defendants assert that attorneys W. A. Lienke, and Finstad and Ruenitz, all of Windom, were not authorized to represent plaintiffs in this action since they had previously been counsel for defendants in the prior action. This position appears inconsistent with the position likewise taken herein that such counsel had at no time been authorized to and did not represent them in the prior action. Regardless of this inconsistency, the record indi-

cates that in the present litigation plaintiffs' present counsel constituted their sole representative, and that the Windom attorneys had completely withdrawn therefrom. After objection to any appearance by the Windom attorneys had been interposed by defendants' counsel, and before the trial actually got underway, Mr. Mahoney stated: "I alone appear for the plaintiffs in this action as their attorney." To this counsel for defendants responded: "All right." It is clear that any opposition to Mr. Mahoney's appearance because the record indicated he at one time may have been associated with the Windom attorneys was waived. At no time had he appeared previously in the litigation, and his prosecution of these particular claims against defendants hence could not have been prejudicial. See, Lee v. Zaske, 213 Minn. 244, 6 N. W. (2d) 793.

■ Defendants finally assert that notwithstanding the evidence submitted as to the defendant Harry Faul, there is no basis whatsoever for a verdict against his wife and codefendant, Anna Faul. The record establishes that she and her husband held the premises as joint tenants and that she left all matters with reference thereto in the hands of her husband. She was asked:

"Q. Your husband did all the writing for you?

"A. He did all the writing, he took care of everything.

                 *     *     *     *     *

"A. I never looked at any letters.

                 *     *     *     *     *

"A. * * * my husband takes care of the business.

                 *     *     *     *     *

"A. I don't take care of the business."

It would seem that such evidence is sufficient to support a finding that under elementary principles of agency the acts of her husband were binding upon her and that the jury's award against her should stand. Lee v. Peoples Coop. Sales Agency, Inc. 201 Minn. 266, 276 N. W. 214; Witzman v. Sjoberg, 164 Minn. 411, 205 N. W. 257.

It is therefore ordered that a new trial on question of damages be granted unless plaintiffs shall within 30 days file a written stipulation in the court below consenting to a reduction of the verdict to $2,559.59.