ST. ONGE, STEWART, JOHNSON AND REENS, LLC *v.*
MEDIA GROUP, INC.
(AC 24287)

Schaller, Bishop and Peters, Js.

Argued April 20—officially released July 20, 2004

*Alexander H. Schwartz,* with whom was *Irene M. Patalano,* for the appellant (defendant).

*Judith Ellenthal,* for the appellee (plaintiff).

*Opinion*

PETERS, J. In this action for the collection of attorney's fees, a law firm seeks payment from its client for patent and trademark work that it performed over a two year period. The principal issue is whether, in order to recover in a jury trial, the law firm was required to present expert evidence about the reasonableness of its fees. The trial court denied a motion for a directed verdict that was based on the absence of such evidence and accepted a jury verdict in favor of the law firm. It rendered judgment accordingly. We reverse the judgment of the trial court.

The plaintiff, St. Onge, Stewart, Johnson and Reens, LLC, a law firm specializing in patent and trademark law, filed a three count complaint seeking the payment of $169,678.27 in attorney's fees allegedly due from its client, the defendant, Media Group, Inc. The plaintiff sought recovery for breach of an express contract, breach of an implied contract and unjust enrichment of the defendant. In each count, the plaintiff alleged that the parties had agreed that the plaintiff "should charge reasonable fees" for services rendered. The defendant denied the plaintiff's allegations that the parties had, in any fashion, agreed to a fee arrangement.[1]

---

[1] Prior to trial, the plaintiff applied for and obtained a prejudgment remedy for the entire amount allegedly owed.

Before the beginning of the trial, the defendant filed a motion, pursuant to Practice Book § 13-4 (4), to preclude the plaintiff from presenting expert testimony on the value of the services rendered or the reasonableness of its fee charges. In the absence of an objection by the plaintiff, the court granted the motion. As a result, the case was heard by the jury without the assistance of any expert testimony.

At the conclusion of the plaintiff's case-in-chief, the defendant filed a motion for a directed verdict. It alleged that, without such expert testimony, the plaintiff had failed to present evidence that would have enabled the jury properly to determine the reasonableness of the claimed attorney's fees. The court reserved judgment on the defendant's motion until the conclusion of the trial. Because the defendant did not present any evidence, the evidentiary phase of the trial ended immediately.

The jury found that the plaintiff had proven the existence of an implied contract that required the defendant to pay for legal services in accordance with the terms of a fee agreement. It rejected the plaintiff's claim that the parties had entered into an express contract and did not reach the plaintiff's claim of unjust enrichment. Accordingly, the jury awarded the plaintiff $152,710.44 on the second count of its complaint.

The trial court accepted the verdict of the jury and denied the defendant's motion for a directed verdict. It ruled that "the jury could have reasonably found based on all the evidence that there was an implied contract and the damages could be ascertained without expert testimony being required under all the circumstances." The defendant appeals from the court's subsequent judgment in favor of the plaintiff.

The underlying facts are undisputed. In the spring of 1999, in anticipation of a new partner's joining the

plaintiff firm, the plaintiff took on the responsibility of seeing to the defendant's need for protection of its patent and trademark interests. In June, 1999, the plaintiff sent an engagement letter to the defendant, in which it described its hourly rate and requested a $50,000 retainer. The defendant did not respond and did not pay the retainer.

Nevertheless, between May, 1999, and March, 2001, the plaintiff performed various legal services for the defendant. These services included the processing and maintenance of patents and trademarks for the defendant and the pursuit of litigation to protect those rights. During that time, the plaintiff billed the defendant on a monthly basis. From time to time, the defendant made some partial payments to the plaintiff.

In April, 2001, after unsuccessful efforts at settlement, the plaintiff stopped representing the defendant and began this collection action. The action resulted in the $152,710.44 judgment in its favor from which the defendant appeals.

On appeal, the defendant claims that this judgment should be reversed because the trial court improperly denied its motion for a directed verdict. It maintains that the plaintiff was not entitled to prevail because the plaintiff (1) failed to present any expert testimony to establish the reasonableness of the attorney's fees it sought and (2) presented insufficient lay evidence about the reasonableness of the fees. Because we agree with the defendant's first claim, we do not reach the second one.

The defendant's argument about the necessity for expert testimony to support the plaintiff's collection action has two parts. Its broader argument is that expert testimony is required in *all* jury cases because the reasonableness of attorney's fees is always beyond the knowledge of jurors. Its narrower argument is that

expert testimony was required in *this* case due to the factual complexities of this plaintiff's collection action.

Before addressing the merits of the defendant's arguments, we set forth our standard of review. "A verdict may be directed where the decisive question is one of law or where the claim is that there is insufficient evidence to sustain a favorable verdict." (Internal quotation marks omitted.) *Young* v. *Rutkin*, 79 Conn. App. 355, 363, 830 A.2d 340, cert. denied, 266 Conn. 920, 835 A.2d 60 (2003). Because the defendant's challenge to the trial court's refusal to direct a verdict raises a question of law about the necessity for expert testimony, our review is plenary. See *Miller* v. *Westport*, 268 Conn. 207, 214, 842 A.2d 558 (2004). We address each of the defendant's arguments separately.

I

## NECESSITY OF EXPERT TESTIMONY IN ALL JURY CASES

In its first claim, the defendant proposes the adoption of a bright line rule that expert testimony is required whenever a jury is asked to decide whether an attorney is entitled to collect legal fees. In its view, regardless of the circumstances, the reasonableness of legal fees is a subject outside of the knowledge base that we reasonably may expect jurors to have. We disagree.

It is common ground that, to establish a right to recover unpaid professional fees on a claim of implied contract, the plaintiff needed to provide an evidentiary foundation of reasonableness for the fees that it charged. See *Janusauskas* v. *Fichman*, 264 Conn. 796, 804–805, 826 A.2d 1066 (2003) ("A true implied . . . contract can only exist . . . where there is no express one. It is one which is inferred from the conduct of the parties though not expressed in words. . . . In such a case, the law implies from the circumstances, a promise

by the defendant to pay the plaintiff what those services are reasonably worth." [Internal quotation marks omitted.]).

Assessment of the reasonableness of attorney's fees traditionally has been guided by several factors. "These factors include the time and labor required, the novelty and difficulty of the questions involved, and the fee customarily charged in the locality for similar legal services." *Sorrentino* v. *All Seasons Services, Inc.*, 245 Conn. 756, 775, 717 A.2d 150 (1998); see also *Andrews* v. *Gorby*, 237 Conn. 12, 24, 675 A.2d 449 (1996) ("[t]ime spent is but one factor in determining the reasonableness of an attorney's fee"); Rules of Professional Conduct 1.5.

The question before us is whether we should adopt a bright line rule that no jury, under any circumstances, can ever perform the required multifactor analysis without the assistance of expert testimony. This is an issue of first impression. Although the Supreme Court and this court have addressed the competence of other fact finders to make such an assessment, no Connecticut appellate court has decided whether a jury likewise may have the ability to do so.

Our Supreme Court consistently has noted that "[trial] courts have a general knowledge of what would be reasonable compensation for services which are fairly stated and described." (Internal quotation marks omitted.) *Shapero* v. *Mercede*, 262 Conn. 1, 9, 808 A.2d 666 (2002).[2] Because of this general knowledge, "[t]he court [is] in a position to evaluate the complexity of the issues presented and the skill with which counsel

---

[2] Our Supreme Court recently has rearticulated the necessary factual foundation for the application of a court's general knowledge. It has held that "to support an award of attorney's fees, there must be a clearly stated and described factual predicate for the fees sought, apart from the trial court's general knowledge of what constitutes a reasonable fee." *Smith* v. *Snyder*, 267 Conn. 456, 477, 839 A.2d 589 (2004).

had dealt with these issues." (Internal quotation marks omitted.) *Miller* v. *Kirshner*, 225 Conn. 185, 201, 621 A.2d 1326 (1993). Therefore, "[n]ot only is expert testimony not required, but such evidence, if offered, is not binding on the court." (Internal quotation marks omitted.) *Appliances, Inc.* v. *Yost*, 186 Conn. 673, 680–81, 443 A.2d 486 (1982). Recently, our Supreme Court extended this principle to assessment of attorney's fees by attorney trial referees. *Shapero* v. *Mercede*, supra, 10.

In support of the defendant's argument that, unlike a judge or an attorney trial referee, a jury always needs expert guidance about the reasonableness of attorney's fees, the defendant cites two cases, *Pearl* v. *Nelson*, 13 Conn. App. 170, 534 A.2d 1257 (1988), and *Shapero* v. *Mercede*, supra, 262 Conn. 1.

In *Pearl*, this court upheld the trial court's decision *permitting* the presentation of expert evidence by an attorney who had sued a former client to recover fees for legal services. The client objected to the admissibility of this evidence on the ground that the attorney could not recover in the absence of a fee agreement because the attorney had failed to state a claim in quantum meruit in his pleadings. We agreed with the trial court that the complaint contained the necessary pleading. In the process of resolving this procedural issue, we noted that although "[c]ourts have a general knowledge of what would be a reasonable attorney's fee . . . *the subject is not one which is within the ordinary knowledge and experience of jurors.*" (Citation omitted; emphasis added.) *Pearl* v. *Nelson*, supra, 13 Conn. App. 172.

In *Shapero* v. *Mercede*, supra, 262 Conn. 10, our Supreme Court cited this statement in *Pearl* with approval. As in *Pearl*, the controversy in *Shapero* did not concern the need for expert testimony in fee collection cases that are tried to a jury. Instead, *Shapero* held

that attorney trial referees, like trial courts, have the professional expertise to assess the sufficiency of the evidentiary support for a fee collection action without the assistance of expert testimony. Id.

We agree with the plaintiff that *Pearl* and *Shapero* do not establish that expert testimony was required in this case. Neither case resolved any issue relating to the competence of jurors to decide fee collection disputes. See *Tracy* v. *Allstate Ins. Co.*, 76 Conn. App. 329, 337, 819 A.2d 859 (2003) (statements that are dicta are not binding authority), aff'd, 268 Conn. 281, 842 A.2d 1123 (2004).

In the absence of binding precedents, we look to analogous areas of the law for guidance. In our view, the closest analogy is to be found in the case law of legal malpractice.

In legal malpractice litigation, expert evidence is required for most cases but not for all. "The general rule is that where [an attorney's] exercise of proper professional skill and care is in issue, expert testimony tending to establish the want of such skill and care is essential to recovery. . . . The rationale underlying that rule is that in most cases, the determination of an attorney's standard of care, which depends on the particular circumstances of the attorney's representation, is beyond the experience of the average layperson, including members of the jury and perhaps even the presiding judge." (Citation omitted; internal quotation marks omitted.) *Celentano* v. *Grudberg*, 76 Conn. App. 119, 126, 818 A.2d 841, cert. denied, 264 Conn. 904, 823 A.2d 1220 (2003). The general rule does not, however, apply to cases "where there is present such an obvious and gross want of care and skill that the neglect is clear even to a layperson." (Internal quotation marks omitted.) *Davis* v. *Margolis*, 215 Conn. 408, 416 n.6, 576 A.2d 489 (1990). A flexible approach to jury compe-

tence to make reasoned decisions about legal performance has worked well in legal malpractice cases. See *Caron* v. *Adams*, 33 Conn. App. 673, 690, 638 A.2d 1073 (1994).

Malpractice cases and collection cases raise important overlapping issues. In both situations, the fact finder must assess legal strategy and outcomes in order to evaluate the choices made by the attorney whose performance of professional services is at issue.

We are persuaded that, in collection cases as in malpractices cases, a jury's competence to make the required assessments depends on the extent to which jurors' everyday experience has prepared them to undertake this challenging responsibility. Courts in other jurisdictions have come to a similar conclusion. See, e.g., *Barlin* v. *Barlin*, 156 Cal. App. 2d 143, 149–50, 319 P.2d 87 (1957); *Wojahn* v. *Faul*, 242 Minn. 33, 38, 64 N.W.2d 140 (1954); *CPS International, Inc.* v. *Harris & Westmoreland*, 784 S.W.2d 538, 541 (Tex. App. 1990); but see, e.g., *Mitchell* v. *Goodyear Service Store*, 306 Md. 27, 34, 506 A.2d 1178 (1986).

We hold, therefore, that the need to present expert testimony in collection cases is best decided, not by a bright line rule, but by careful examination of the circumstances of each particular case. We see no need to foreclose the possibility that some cases involving fee disputes can be decided on the basis of evidence that is sufficiently transparent to obviate the need for the testimony of experts.

II

NECESSITY FOR EXPERT TESTIMONY IN THIS CASE

We turn now to the defendant's alternate claim that expert testimony was required in this case due to the factual complexities that it presented. We agree with this claim.

A case-by-case determination of the need for expert testimony in a fee collection case requires a close examination of the evidence that the plaintiff presented to the jury. The plaintiff's case was based entirely on the testimony of two fact witnesses, Stephen McNamara and Daniel Coughlin, each of whom had provided legal services to the defendant at various junctures.

Each of these witnesses described, at some length, the nature and the complexity of the patent and trademark projects that they had pursued on behalf of the defendant.[3] In addition, Coughlin described the ongoing fee disputes between the plaintiff and Herman S. Howard, the defendant's president and chief executive officer.

Neither witness, however, provided the jury with a factual basis for determining the reasonableness of the fees that the plaintiff charged the defendant. It was not enough to inform the jury about the services performed for the defendant and the time spent in doing so.[4] The plaintiff also was required to provide evidence about the necessity for the services rendered and the reasonableness of the plaintiff's fee structure in light of community standards. See *Sorrentino* v. *All Seasons*

[3] Recounting activities completed during August, 2000, McNamara stated that "there's ownership searching for all the trademark[s] that are owned by the various different [defendant] companies, I think there are thirteen companies that are involved there. Then there's trademark discussions and patent discussions of one kind or another. There's a trademark office cancellation proceeding that some work, you know, involved with it five hours of work there. There's a patent application where the patent office has entered a rejection and we're responding to that rejection and the patent office with regard to something called a suction support assembly which I believe is something called Happy Hangings product."

[4] Coughlin's testimony that he devoted a substantial part of his efforts to the defendant's projects does not, without more, permit an inference that this investment of time and energy was necessary. For the same reason, the twenty-seven boxes of materials that the plaintiff allegedly created at the request of the defendant do not establish the plaintiff's case. The boxes that Coughlin described were never entered into evidence.

*Services, Inc.*, supra, 245 Conn. 775; *Andrews* v. *Gorby*, supra, 237 Conn 24; *Esposito* v. *Esposito*, 71 Conn. App. 744, 750, 804 A.2d 846 (2002). The plaintiff did not produce a scintilla of evidence on the latter factors.

In the plaintiff's view, the evidence presented by its witnesses was a sufficient basis for the jury verdict because this case involved nothing more than the collection of fees that the defendant had agreed to pay. This argument might have some force if the jury had found the existence of an express contract between the parties. It is not persuasive for a jury verdict based on implied contract.[5]

We similarly are unpersuaded by the plaintiff's argument that the witnesses' description of their work for the defendant implicitly established the need for the work or the reasonableness of the fees charged. In light of the defendant's repeated refusal to pay the bills sent by the plaintiff, the jury had no factual basis for drawing the inference that the documentation exchanged between the parties[6] established congruence between the plaintiff's billing practice and that of other patent and trademark law firms in the community. Although our Supreme Court has held that "a plaintiff is competent to give his opinion as to the reasonable value of his own services"; *Anderson* v. *Zweigbaum*, 150 Conn. 478, 483, 191 A.2d 133 (1963); we know of no case that holds that such an opinion may be inferred when a

---

[5] Contrary to the plaintiff's view, we are unprepared to assume that the high profile of attorneys in the media has placed the issue of legal fees at the doorstep of prospective jurors. Leaving aside the accuracy of these presentations, we think it unlikely that any of them would have enlightened a juror about the reasonableness of fees for complex patent and trademark litigation.

[6] Specifically, the plaintiff cites (1) the June, 1999 engagement letter sent to the defendant, (2) twenty-two invoices detailing the time and labor expended on behalf of the defendant, and (3) twenty-seven boxes of legal papers allegedly produced at the request of the defendant.

witness does not expressly offer it in his testimony so that it may be explored on cross-examination.[7]

Finally, the plaintiff attempts to sidestep its burden of proving the reasonableness of its fees by pointing to the defendant's failure to present any evidence of unreasonableness. In support of its contention, the plaintiff cites a line of cases that have created an evidentiary presumption that "proof of the expenses paid or incurred affords some evidence of the value of the services, and if unreasonableness in amount does not appear from other evidence or through application of the trier's general knowledge of the subject-matter, its reasonableness will be presumed." (Internal quotation marks omitted.) *Markey* v. *Santangelo*, 195 Conn. 76, 80, 485 A.2d 1305 (1985); *Flynn* v. *First National Bank & Trust Co.*, 131 Conn. 430, 436, 40 A.2d 770 (1944); *Carangelo* v. *Nutmeg Farm, Inc.*, 115 Conn. 457, 462, 162 A. 4 (1932).

The plaintiff's argument is unavailing because it fails to take account of the context in which those cases arose. The holdings in the cases it cites depended on the jury's *presumed general knowledge of the subject matter*. In this case, by contrast, the plaintiff's own witnesses irrefutably documented the complexity of patent and trademark practice.[8]

[7] In addition, it is doubtful whether McNamara and Coughlin would have been able to offer an opinion as to all the services rendered, because several other attorneys completed tasks for the defendant.

[8] For example, McNamara described one of the plaintiff's projects, the TriStar litigation, as follows: "[T]hat case was a case . . . about this flexible bakeware, muffin tins. . . . And [the defendant] had this product that it was distributing in the United States, and TriStar came out with its competitive product that was felt to be a copy of [the defendant's] product. The litigation was filed on the grounds of what's called trade dress . . . [w]hich is a body of law which is similar to trademark law . . . which says . . . if a product has a unique appearance that it can be protectable in the same way a brand can be. So, for example, the Coca-Cola bottle is a typical example of trade dress; it has a unique appearance that everyone recognized and if you saw the same shape you would assume it's a Coca-Cola. Well, we were working on trying to develop a trade dress argument with regard to the appearance

In sum, we are persuaded that the patent and trademark issues at the heart of this case were beyond the reach of the ordinary knowledge of a lay jury. Indeed, the plaintiff's own witnesses acknowledged that these issues are normally not within the realm of legal knowledge attained by *most lawyers.* As a result, the jury cannot be presumed to have had the knowledge to evaluate the necessity for the services rendered by the plaintiff or the propriety of the fees that it charged the defendant.

We conclude, therefore, that the trial court improperly denied the defendant's motion for a directed verdict. See *LePage* v. *Horne,* 262 Conn. 116, 135, 809 A.2d 505 (2002); *Danbury* v. *Dana Investment Corp.,* 257 Conn. 48, 58, 776 A.2d 438 (2001) ("plaintiff is limited to only one opportunity to prove its claim").

The judgment is reversed and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.

of this bakeware. . . . And this was being pursued in part because . . . there was a pending patent application. It hadn't yet issued as a patent, so there wasn't yet a patent on the product [so] that you can perhaps pursue a patent claim against the infringing product. So, we were trying to see if maybe this trade dress approach would work in that situation . . . ."