ULLMAN, PERLMUTTER AND SKLAVER *v.*
BONNIE BYERS
(AC 26894)

DiPentima, Gruendel and Lavine, Js.

Argued April 20—officially released July 11, 2006

*Susan D. Red,* for the appellant (defendant).

*Gary P. Sklaver,* with whom was *Irving H. Perlmutter,* for the appellee (plaintiff).

*Opinion*

GRUENDEL, J. The defendant, Bonnie Byers, appeals from the judgment, rendered after a trial to the court, in favor of the plaintiff, the law firm of Ullman, Perlmutter & Sklaver, on its action for payment of unpaid legal fees. On appeal, the defendant claims that the court improperly concluded that (1) an unsigned retainer

agreement was enforceable and (2) the plaintiff acted appropriately in representing her. We affirm the judgment of the trial court.

Until the time at which she was removed, the defendant acted as conservator for Lauretta Carroll. Thereafter, the new conservator, Lisa N. Davis, and the subsequent guardian, Kenneth Hesselbacher, brought suit against the defendant, seeking the repayment of $147,000 that allegedly was improperly transferred from Carroll to others by the defendant.[1] On February 6, 2002, the defendant first met with the plaintiff, seeking representation in this matter. After that meeting, the plaintiff mailed to the defendant an engagement letter. In that letter, the plaintiff explained the anticipated costs and fees associated with representation in this matter,[2] and indicated that it would require a retainer of $7500 in order to begin providing legal services to the defendant. Afterward, the plaintiff received a $7500 check dated March 11, 2002, from the defendant. The plaintiff continued to perform legal services for the defendant through December, 2003, at which time the underlying action against the defendant was settled for $50,000.

Throughout the professional relationship, the plaintiff held the $7500 retainer in a trust account and used those funds to pay fees incurred from work performed

[1] When Carroll moved from Connecticut to New York, Hesselbacher was appointed guardian of Carroll, and Davis' conservatorship terminated. Hesselbacher is the named plaintiff in the underlying action. The lawsuit was also initiated against the three children of the defendant. The actions against the defendant's children were subsequently withdrawn.

[2] The engagement letter stated that the plaintiff "estimat[ed] that your legal fee in this action could be in the range of $15,000.00 to $25,000.00. This is only an estimate and your actual fee may be more or less than this estimate. I would also estimate that the costs, excluding any expert witness fees, could be in the range of $5,000.00 to $10,000.00." The letter also explained that the plaintiff would charge on an hourly basis for services rendered and gave the hourly rates for each attorney at the firm.

for the defendant. Each month, the plaintiff mailed to the defendant a bill summarizing what services she was billed for, the use of the retained funds to pay that bill and a balance of the funds remaining in the trust account. The June 1, 2003 bill indicated that the trust account balance had been depleted and that the plaintiff was then being billed for additional amounts owed.[3] The defendant continued to receive such bills through the remainder of the relationship, but did not make payment on them. By letter dated February 3, 2004, the plaintiff demanded payment of the unpaid balance. When payment was not received, the plaintiff instituted this action on March 23, 2004. The court heard testimony on March 17, 23 and 31, 2005. On August 16, 2005, the court rendered judgment in favor of the plaintiff and awarded it damages of $5640.70.[4] This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that there was not an enforceable agreement between the parties for the performance of legal services. We are not persuaded.

We begin by stating our standard of review. "The existence of a contract is a question of fact to be determined by the trier on the basis of all of the evidence. . . . On appeal, our review is limited to a determination of whether the trier's findings are clearly erroneous.

---

[3] The defendant argues that the plaintiff did not provide her with sufficient notice that the retainer was depleted because it did not communicate it to her orally. Although the defendant did not always choose to read her bills, she acknowledged receipt of them and that they contained this information. Accordingly, the defendant's argument is unpersuasive.

[4] The January 1, 2004 bill mailed to the defendant by the plaintiff indicated an outstanding principal balance of $5977. On January 25, 2004, the defendant notified the plaintiff that she had misplaced the December bill and would be mailing a check that day to start payment. On February 2, 2004, the defendant notified the plaintiff that she would be completing a closing shortly and would send a partial payment. An August 19, 2004 bill from the plaintiff to the defendant reflects payments of $650, reducing the principal balance to $5327. Consequently, the court arrived at its damages calculation from a principal of $5327 and interest of $313.70.

. . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *MD Drilling & Blasting, Inc.* v. *MLS Construction, LLC*, 93 Conn. App. 451, 454, 889 A.2d 850 (2006).

The crux of the defendant's argument is that the court could not have found that an enforceable contract existed because she did not sign the engagement letter mailed to her by the plaintiff.[5] The plaintiff, she asserts, is therefore in violation of rule 1.5 (b) of the Rules of Professional Conduct.[6] It is well established that "[p]ar-

---

[5] The defendant also argues that she testified that she did not understand the terms of the engagement letter mailed to her by the plaintiff and, thus, no contract was formed. "[I]t is the trier's exclusive province to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony." (Internal quotation marks omitted.) *Lowe* v. *Shelton*, 83 Conn. App. 750, 765, 851 A.2d 1183, cert. denied, 271 Conn. 915, 859 A.2d 568 (2004). The court, therefore, need not have credited the defendant's testimony.

[6] Rule 1.5 (b) of the Rules of Professional Conduct provides in relevant part: "When the lawyer has not regularly represented the client, the basis or rate of the fee, whether and to what extent the client will be responsible for any court costs and expenses of litigation, and the scope of the matter to be undertaken shall be communicated to the client, in writing, before or within a reasonable time after commencing the representation. . . ." We note that the plaintiff met this burden, as it provided to the defendant, in a timely manner, in writing, a statement of the scope of the representation, and the costs and fees expected to be incurred.

In her reply brief, the defendant further relies on the comment to rule 1.5, directing that "the lawyer should conscientiously consider submitting to" a procedure established by the bar for resolution of fee disputes. While we agree that the Connecticut Bar Association has established such a procedure, we do not find the plaintiff's choice not to submit to it fatal to its present cause of action.

ties are bound to the terms of a contract even though it is not signed if their assent is otherwise indicated." (Internal quotation marks omitted.) *Original Grasso Construction Co.* v. *Shepherd,* 70 Conn. App. 404, 411, 799 A.2d 1083, cert. denied, 261 Conn. 932, 806 A.2d 1065 (2002). Here, it is undisputed that after receiving the engagement letter from the plaintiff, the defendant mailed to the plaintiff the $7500 retainer fee. It also is undisputed that after receiving the retainer fee, the plaintiff provided legal representation to the defendant for a number of months, with the plaintiff's active participation in the matter. "One enjoying rights is estopped from repudiating dependent obligations which he has assumed; parties cannot accept benefits under a contract fairly made and at the same time question its validity." (Internal quotation marks omitted.) *Green* v. *Connecticut Disposal Service, Inc.,* 62 Conn. App. 83, 95, 771 A.2d 137, cert. denied, 256 Conn. 912, 772 A.2d 1124 (2001); see also *Schwarzschild* v. *Martin,* 191 Conn. 316, 321–22, 464 A.2d 774 (1983) ("[i]n the absence of a statute requiring a signature . . . parties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated, such as by the acceptance of benefits under the contract" [internal quotation marks omitted]). In light of these facts, the court's finding that an enforceable contract existed between the parties was supported by the evidence.[7]

## II

The defendant next claims that the court improperly awarded the plaintiff additional fees in the amount

[7] The defendant also argues, in the alternative, that there was an implied contract, and the plaintiff is entitled only to reasonable compensation for the services provided, which it has already received. In light of our conclusion on the defendant's second claim, which is that the plaintiff acted properly, this argument is unavailing. Even if the fees were awarded in this manner, the court did not abuse its discretion in awarding the amount that it did.

sought because the plaintiff already had been paid fair value for the services provided. Specifically, the defendant asserts that the legal services performed by the plaintiff[8] were deficient and, thus, the plaintiff is not entitled to additional compensation. We agree with the conclusion of the court that "[i]n all instances, the attorney acted properly. He did not seek any added compensation."

"It is well established that we review the trial court's decision to award attorney's fees for abuse of discretion. . . . This standard applies to the amount of fees awarded . . . and also to the trial court's determination of the factual predicate justifying the award. . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Simms* v. *Chaisson*, 277 Conn. 319, 325, 890 A.2d 548 (2006).

"Assessment of the reasonableness of attorney's fees traditionally has been guided by several factors. These factors include the time and labor required, the novelty and difficulty of the questions involved, and the fee customarily charged in the locality for similar legal services." (Internal quotation marks omitted.) *St. Onge, Stewart, Johnson & Reens, LLC* v. *Media Group, Inc.*, 84 Conn. App. 88, 93, 851 A.2d 1242, cert. denied, 271 Conn. 918, 859 A.2d 570 (2004); see also Rules of Professional Conduct 1.5 (a). Here, the crux of the defendant's claim is that the plaintiff's fees are unreasonable because they include time and labor spent on unnecessary or wasteful tasks.

---

[8] We note that Irving H. Perlmutter was the sole attorney from the plaintiff providing legal services to the defendant.

The defendant first claims that the plaintiff seeks payment for services that were not performed. The defendant bases her argument on the statement in the retainer agreement that "[t]o prove the correctness of your transactions with Ms. Carroll, we will need to contact those persons you have identified as possible witnesses and to take statements from them. We will need to take each of their depositions." In support of her argument, she cites the testimony of Irving H. Perlmutter, one of the plaintiff's attorneys, that he spoke only to one person and that he did not take any depositions. She further cites to her testimony regarding the list of other persons the plaintiff could have deposed. The defendant, however, does not refer to any evidence that she actually was billed for services that the plaintiff did not perform. Our review of the record reveals that the defendant was not in fact billed for such services. The court's finding that the plaintiff did not seek added compensation is, therefore, proper.

The defendant next claims that the plaintiff seeks payment for unnecessary time spent attempting to disqualify Tyler Cooper & Alcorn (Tyler Cooper), the law firm to which Davis and the attorney representing her and Hesselbacher belong.[9] The basis of this attempted disqualification was the prior representation of the defendant in proceedings related to the dissolution of her marriage by an attorney now of counsel with Tyler Cooper. Consequently, the plaintiff filed a motion to disqualify, which was heard by the court and subsequently denied.

The defendant now argues that the court could not find that the plaintiff acted properly with regard to the time spent attempting to disqualify Tyler Cooper because she did not consent to it. The record reveals

---

[9] The defendant raised this claim as a special defense in her answer. The court found in favor of the plaintiff on the special defense.

that the defendant was aware of the reasons for seeking disqualification of the firm, as well as the efforts made by the plaintiff in doing so. In fact, the defendant reviewed the memorandum of law in support of the motion to disqualify before it was submitted to the court, offered her suggestions to improve it and testified at the hearing on the motion. Moreover, the court was free to credit Perlmutter's testimony that the defendant never indicated that she had any objection to proceeding with the motion to disqualify.[10] In light of these facts, the defendant's claim fails.

The defendant also argues that the court could not find that the plaintiff acted properly because the underlying reason for seeking disqualification of Tyler Cooper was remote in time and based on public information. In making this argument, the defendant relies solely on the financial information obtained by the attorney who represented her in the dissolution action in the early 1990s. Perlmutter, however, testified that this attorney "knew much more than just the perfunctory matters that a lawyer [who] had represented a client in a divorce case knows."[11] Even though the court denied the motion to disqualify, success is only one factor used in determining attorney's fees. Rules of Professional Conduct 1.5 (a). The court was within its discretion to determine that the plaintiff acted properly and that it is entitled to compensation for the time spent attempting to have Tyler Cooper disqualified.

---

[10] In response, the defendant offers her testimony that she voiced her objections to the attempt to disqualify Tyler Cooper, which were rejected by the plaintiff. "Issues of credibility, however, are exclusively within the province of the trier of fact . . . ." (Citations omitted.) *Battistoni* v. *Weatherking Products, Inc.*, 41 Conn. App. 555, 564, 676 A.2d 890 (1996). The court, therefore, was free to reject this testimony.

[11] These facts included that the defendant had financial dealings with Carroll during the period in which the attorney represented her and that the attorney had met Carroll during the course of the representation.

The defendant next claims that the plaintiff should not be compensated for time spent filing a motion to open a default. On April 9, 2003, Hesselbacher filed a motion for default for failure to plead, which was granted by the clerk of the court the following day. Subsequently, the plaintiff filed a motion to open the default, which was granted on May 28, 2003. Shortly before the motion for default was filed, the motion for disqualification of Tyler Cooper was still pending. Additionally, Perlmutter testified that the reason for failing to file the responsive pleading was not an inability to calendar properly, but rather the filing of a series of motions that crossed in the mail and the confusion caused by them. On the basis of this series of events, the court was within its discretion to determine that the plaintiff's conduct was appropriate and that it is entitled to compensation for its efforts.

The defendant next claims that the plaintiff seeks payment for unnecessary time spent preparing an answer. The record reveals that the plaintiff billed the defendant $1100 on December 1, 2003, for four hours spent in November, prior to settlement, preparing an answer, among other tasks. This bill, the defendant argues, is inappropriate because the answer was never filed in court or produced at trial. In light of the previous default judgment that was entered for failure to file a pleading, the court was within its discretion to determine that the plaintiff reasonably billed the defendant for time spent preparing an answer, even if the case settled before the answer needed to be filed.

The judgment is affirmed.

In this opinion the other judges concurred.