# GERALD MARCIANO *v.* NEIL W. KRANER ET AL.
## (AC 31090)

Gruendel, Beach and Sullivan, Js.

Argued November 19, 2010—officially released January 18, 2011

*Zbigniew S. Rozbicki,* for the appellant (plaintiff).

*Timothy Brignole,* with whom, on the brief, was *Juri E. Taalman,* for the appellees (defendants).

*Opinion*

GRUENDEL, J. The plaintiff, Gerald Marciano, appeals from the judgment of the trial court granting the motion filed by the defendants, Neil W. Kraner and the Law Offices of George B. Bickford,[1] to set aside the verdict reached by the jury in favor of the plaintiff. On appeal, the plaintiff claims that the court improperly determined that, in the absence of expert testimony, he could not prevail in his action for breach of fiduciary duty against the defendants. We disagree and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On March 31, 2000, the plaintiff contacted Kraner, who was an attorney practicing with the Law Offices of George B. Bickford in East Granby. The plaintiff explained to Kraner that his mother was in a nursing home, that his father, Francis Marciano, Sr. (Francis, Sr.), had recently developed serious mental health problems and had been admitted to the Institute of Living in Hartford and that he wanted to preserve his inheritance interest in his parents' estate assets in the event of their deaths. Notably, the plaintiff told Kraner that the home in which he and his family had been living since 1996 in Barkhamsted (Barkhamsted property) was owned by his father and that he wanted to obtain title to the Barkhamsted property prior to Francis, Sr.'s death. The plaintiff further informed Kraner that his parents' total estate assets consisted of the Barkhamsted property,

---

[1] Throughout this opinion we refer to the defendants collectively as the defendants and to both defendants individually by name.

with a value of $122,500, a second home in Torrington (Torrington property), worth $132,500, $130,000 in cash and cars worth $22,500, for a total estate value of approximately $407,500. Given this information, Kraner explained that pursuant to state and federal medicaid laws,[2] his parents' assets would have to be used to pay for their nursing home care until their total assets had been depleted to $1600, at which point they would qualify for state medicaid assistance in paying their nursing home care expenses.[3]

Unsatisfied with this result, the plaintiff retained Kraner to review various avenues for preserving the value of his parents' estate while also transferring ownership of the Barkhamsted property and qualifying for state medicaid assistance. Subsequently, Kraner advised the plaintiff that the only way to preserve the value of his parents' assets, including the Barkhamsted property, while also qualifying for medicaid, would be to transfer all of their real and personal property to a disabled child.[4] This advice was memorialized in a letter from Kraner to the plaintiff, dated April 14, 2000, which stated in relevant part: "[P]erhaps the best path for protecting some of your father's assets would be to transfer them to his disabled son. . . . [W]e would need to draft deeds to transfer the real property, and you had expressed [an] interest in having a closing with your brother wherein he could transfer ownership of [the Barkhamsted] property to you." The reference to

---

[2] "Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396s, commonly known as the Medicaid Act, is a federal-state cooperative program designed to provide medical assistance to persons whose income and resources are insufficient to meet the costs of medical care." (Internal quotation marks omitted.) *Sikand* v. *Wilson-Coker*, 276 Conn. 618, 620, 888 A.2d 74 (2006). "General Statutes § 17b-2 (8) designates the department [of social services] as the state agency responsible for administering the state's medicaid program." Id., 621.

[3] See Department of Social Services, Uniform Policy Manual § 4005.10.

[4] See Department of Social Services, Uniform Policy Manual § 3028.10.

the "disabled son" in Kraner's April 14, 2000 letter was to the plaintiff's brother, Francis Marciano, Jr. (Francis, Jr.), who was living in California at the time and receiving disability benefits. To complete the proposed transaction, Kraner contacted Francis, Jr., who agreed to accept a transfer of the assets from his parents and then in turn transfer the Barkhamsted property to the plaintiff. Kraner also handled all the legal work involved in appointing the plaintiff conservator of Francis, Sr.'s estate and obtaining approval from the Probate Court for the transfer of Francis, Sr.'s assets to Francis, Jr.

On October 26, 2000, in Kraner's office, the plaintiff executed two fiduciary deeds for both the Barkhamsted and Torrington properties owned by Francis, Sr., to Francis, Jr. Francis, Jr., also executed a quitclaim deed of the Barkhamsted property to the plaintiff at this closing, and Kraner represented that all three deeds would be recorded shortly thereafter.[5] Following the closing, Kraner began the preparation of Francis, Sr.'s application for medicaid benefits. Prior to completing the application, however, Kraner was contacted by the department of social services (department), which informed him that the quitclaim deed from Francis, Jr. to the plaintiff was illegal as an attempt to circumvent medicaid laws and that, if Kraner recorded the quitclaim deed, both he and the plaintiff may be subject to criminal prosecution. Additionally, the department advised Kraner that Francis, Sr.'s medicaid application would not be approved until the department received confirmation that the quitclaim deed had been destroyed.[6]

---

[5] Although there was conflicting testimony at trial regarding Kraner's representation to record the deeds, we presume for purposes of this appeal that Kraner did indeed make this representation to the plaintiff, as this presumption does not affect our disposition of the case.

[6] Uncontroverted evidence presented to the court demonstrated that Francis, Sr.'s medicaid application would have been denied had the quitclaim deed been recorded by Kraner. Moreover, if the medicaid application had been denied, then the assets of the plaintiff's parents, including the Barkhamsted property, would have to have been liquidated to pay for their medical and nursing home care. There was evidence presented that the cost

Kraner then advised the plaintiff of this information and destroyed the quitclaim deed for the Barkhamsted property. At the time of Francis, Sr.'s death in March, 2003, the plaintiff and Francis, Jr., had several disagreements regarding the distribution of their parents' estate assets. In November, 2004, the plaintiff again contacted Kraner, hoping to consummate a transfer of the ownership of the Barkhamsted property by executing and recording a new deed for the Barkhamsted property. To complete the transfer, Kraner advised the plaintiff that Francis, Jr., would need to execute the deed for the Barkhamsted property. Francis, Jr., however, was unwilling to execute the deed in favor of the plaintiff and, in fact, sold the Barkhamsted property to a third party.[7]

On March 1, 2005, the plaintiff filed a five count complaint against the defendants, alleging, inter alia, legal malpractice and breach of fiduciary duty. A jury trial ensued and, following the plaintiff's case-in-chief, the defendants filed a motion for a directed verdict. The court granted the defendants' motion as to the count of legal malpractice[8] but reserved decision with respect to the count of breach of fiduciary duty until after the jury returned its verdict. On December 19, 2008, the jury returned a verdict in favor of the plaintiff on the

---

of the parents' medical and nursing home care was approximately $80,000 per year for each parent. Because the plaintiff's mother remained in a nursing home from the start of 2000 to her death in early 2002, and because Francis, Sr., remained in nursing home care from early 2000 until his death on March 30, 2003, the cost of both parents' medical and nursing home expenses would have exceeded the total value of their assets. Thus, if Francis, Sr.'s medicaid application had been denied, the Barkhamsted property would no longer have been available for distribution as part of the estate.

[7] Nonetheless, the plaintiff was able to purchase the Barkhamsted property from a third party on October 15, 2007, for $120,000.

[8] In support of this ruling, the court noted that "[t]he plaintiff failed to introduce admissible expert testimony to support his legal malpractice claim," and, therefore, a directed verdict was warranted as to this count.

count of breach of fiduciary duty and awarded the plaintiff $196,000 in damages. The defendants then moved to set aside the verdict, arguing that, because the plaintiff failed to present any expert testimony "to establish the extent of the [defendants'] fiduciary duty and the terms and conditions of a fiduciary duty of a lawyer under the same or similar circumstances" of the defendants, the plaintiff could not possibly prevail in his cause of action for breach of fiduciary duty. On April 23, 2009, in a memorandum of decision, the court granted the defendants' motion to set aside the verdict, ruling that "expert testimony was needed to establish whether . . . Kraner had a particular duty to the plaintiff and whether that duty was violated." As the court reasoned, the jury's verdict in favor of the plaintiff for breach of fiduciary duty had to be set aside because the plaintiff failed to present any "expert testimony as to what conduct by the defendants constituted a breach of fiduciary duty." The court also explained that "[t]here was no evidence that . . . Kraner could have taken any legal action to interfere with Francis, Jr.'s ability to dispose of his property as he saw fit." Therefore, "there was no evidence that any conduct by . . . Kraner caused the plaintiff to sustain any damages . . . [and] [t]his lack of any evidence of a causal relationship between the defendants' alleged misconduct and the $196,000 awarded by the jury [was] an additional basis for setting aside the verdict." This appeal followed.

The plaintiff now claims that the court improperly granted the defendants' motion to set aside the verdict. Specifically, the plaintiff argues that the court incorrectly determined that, in the absence of expert testimony, he could not prevail in his cause of action for breach of fiduciary duty against the defendants. Additionally, the plaintiff argues that the court improperly concluded that "there was no evidence that any conduct

by . . . Kraner caused the plaintiff to sustain any damages."

Before addressing the merits of the plaintiff's claims, we begin by setting forth the applicable legal principles and standard of review governing our analysis. "A motion to set aside the verdict should be granted if the jury reasonably and legally could not have reached the determination that they did in fact reach. . . . [Put differently], [i]f the jury, without conjecture, could not have found a required element of the cause of action, it cannot withstand a motion to set aside the verdict." (Internal quotation marks omitted.) *Carrano* v. *Yale-New Haven Hospital*, 279 Conn. 622, 646, 904 A.2d 149 (2006). "Thus, the role of the trial court on a motion to set aside the jury's verdict is not to sit as [an added] juror, but, rather, to decide whether, viewing the evidence in the light most favorable to the prevailing party, the jury could reasonably have reached the verdict that it did." (Internal quotation marks omitted.) *Hunt* v. *Prior*, 236 Conn. 421, 429 n.21, 673 A.2d 514 (1996). As a corollary, "it is the court's duty to set aside the verdict when it finds that it does manifest injustice, and is . . . palpably against the evidence." (Internal quotation marks omitted.) *Malmberg* v. *Lopez*, 208 Conn. 675, 679–80, 546 A.2d 264 (1988). "The proper appellate standard of review when considering the action of a trial court in granting or denying a motion to set aside a verdict is the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 303, 852 A.2d 703 (2004).

It is important to note at the outset that our review of the record discloses that the plaintiff's count for breach of fiduciary duty is basically nothing more than a carbon copy of his count for legal malpractice. In fact, the only allegation contained in the breach of fiduciary duty count that is absent from the legal malpractice count is: "[T]he defendants owed the plaintiff a fiduciary duty and were required to show a high degree of fidelity [to the plaintiff] and to deal with the plaintiff fairly and in good faith. Despite these obligations and duties, the defendants breached said duties as described herein and deceived the plaintiff." It bears repeating that the court granted the defendants' motion for a directed verdict as to the plaintiff's legal malpractice claim because "[t]he plaintiff failed to introduce admissible expert testimony" in support thereof. As the court correctly explained, "[a] plaintiff cannot obviate the necessity for expert testimony by couching his claim in terms of contract rather than tort"; see *Celentano* v. *Grudberg*, 76 Conn. App. 119, 125, 818 A.2d 841, cert. denied, 264 Conn. 904, 823 A.2d 1220 (2003); or, "[b]y the same token . . . referring to the attorney's conduct as a breach of fiduciary duty." Because the plaintiff failed to introduce any expert testimony as to the preliminary issue of the attorney-client relationship, we cannot say, on the basis of the facts in the present case, that the court improperly granted the defendants' motion to set aside the verdict. Indeed, the jury's verdict awarding the plaintiff damages for breach of fiduciary duty was unsupported by any evidence as to what fiduciary duty was owed by the defendants to the plaintiff, other than inherent in the attorney-client relationship, and how that duty was violated in this case.[9] Although

[9] Because we conclude that the plaintiff failed to introduce any expert testimony whatsoever as to the nature of the attorney-client relationship in this case, we need not address the broader question briefed by the parties of whether expert testimony is always necessary in a cause of action premised on a breach of fiduciary duty in the context of an attorney-client relationship.

every attorney-client relationship imposes a fiduciary duty on the attorney; see *Matza* v. *Matza*, 226 Conn. 166, 183–84, 627 A.2d 414 (1993); a plaintiff cannot avoid his burden to present expert testimony to articulate the contours of that relationship by styling his cause of action as one for breach of fiduciary duty. See *St. Onge, Stewart, Johnson & Reens, LLC* v. *Media Group, Inc.,* 84 Conn. App. 88, 95, 851 A.2d 1242 ("[t]he rationale underlying [the requirement of expert testimony] is that in most cases, the determination of an attorney's standard of care, which depends on the particular circumstances of the attorney's representation, is beyond the experience of the average layperson, including members of the jury and perhaps even the presiding judge" [internal quotation marks omitted]), cert. denied, 271 Conn. 918, 859 A.2d 570 (2004).

Moreover, assuming arguendo that the plaintiff adequately had established the nature of the fiduciary duty owed by the defendants, and how that duty was violated in the present case, we conclude that the court nonetheless properly set aside the verdict. As the plaintiff's counsel stated during oral argument in this appeal, the precise breach of fiduciary duty alleged was Kraner's failure to record the quitclaim deed for the Barkhamsted property following the closing on October 26, 2000. It is undisputed, however, that if Kraner recorded the quitclaim deed for the Barkhamsted property, Francis, Sr.'s medicaid application would have been denied by the department. Additionally, if Francis, Sr.'s medicaid application was denied, the estate assets of the plaintiff's parents, including the Barkhamsted property, would have to have been liquidated to satisfy the outstanding nursing home and medical expenses for both Francis, Sr., and the plaintiff's mother. Thus, if Kraner recorded the quitclaim deed, the Barkhamsted property would no longer be available for distribution as part of Francis, Sr.'s estate. Accordingly, we agree with the

court that "there was no evidence that any conduct by
. . . Kraner caused the plaintiff to sustain any
damages."

To summarize, we conclude that the plaintiff's failure
to present any expert testimony whatsoever as to the
attorney-client relationship was fatal to his cause of
action for breach of fiduciary duty. Further, we con-
clude that, even if the plaintiff adequately established
the nature of the applicable fiduciary duty, the verdict
in his favor was properly set aside in light of the dearth
of evidence that "any conduct by . . . Kraner caused
the plaintiff to sustain any damages."

The judgment is affirmed.

In this opinion the other judges concurred.