STANLEY KOSIOREK, EXECUTOR (ESTATE
OF STANISLAW KOSIOREK)
*v.* JACEK I. SMIGELSKI
(AC 32919)

DiPentima, C. J., and Alvord and Pellegrino, Js.

696

Argued May 16—officially released October 23, 2012

*Jacek I. Smigelski*, pro se, the appellant-cross appellee (defendant).

*William J. Sweeney, Jr.*, for the appellee-cross appellant (plaintiff).

*John A. Barbieri*, for the cross appellee (defendant 122 Main Street Associates, LLC).

*Opinion*

DiPENTIMA, C. J. The self-represented defendant, Jacek I. Smigelski,[1] appeals from the judgment of the trial court rendered in favor of the plaintiff, Stanley Kosiorek, executor of the estate of Stanislaw Kosiorek, following a jury trial.[2] On appeal, the defendant presents a number of overlapping claims of error that stem primarily from the court's denial of his motion to set aside the verdict and for a directed verdict. The plaintiff filed a cross appeal from the judgment of the court directing a verdict in favor of 122 Main Street Associates, LLC, formerly known as 122 Main Street, LLC (122 Main Street), with respect to the counts of the plaintiff's revised complaint alleging common-law and statutory fraudulent conveyance. We are not persuaded by any of the issues raised in the defendant's appeal and affirm the judgment of the trial court. With respect to the cross appeal, we agree in part with the plaintiff and reverse a portion of the judgment of the trial court.

---

[1] According to the judicial branch website, the defendant was admitted to practice law in Connecticut on November 20, 1986. Effective March 3, 2011, the defendant was suspended from the practice of law for a period of fifteen months. See generally *Disciplinary Counsel* v. *Smigelski*, 124 Conn. App. 81, 4 A.3d 336 (2010), cert. denied, 300 Conn. 906, 12 A.3d 1004, cert. denied, U.S. , 132 S. Ct. 101, 181 L. Ed. 2d 28 (2011).

[2] Prior to trial, the trial court granted a motion by the plaintiff to cite in 122 Main Street Associates, LLC, as a defendant. For clarity, we refer in this opinion to Smigelski as the defendant and to 122 Main Street Associates, LLC, as 122 Main Street.

The jury reasonably could have found the following facts. In May or June, 2004, Stanley Kosiorek spoke with attorney John Matulis regarding a probate matter. His father, Stanislaw Kosiorek, had died[3] and the family home located on Terra Road in Plainville had been transferred to the decedent's second wife, Bronislawa Kosiorek.[4] The transfer of the property was completed approximately six weeks before his death. Stanley Kosiorek was appointed executor of the decedent's estate on July 12, 2004. Matulis obtained an order from the Probate Court granting the children of Stanislaw Kosiorek authority to assume responsibility for the body and to make arrangements for a wake, funeral and interment. Next, Matulis began investigating whether the Terra Road property had been transferred validly to Bronislawa Kosiorek. Matulis commenced an action on behalf of Stanley Kosiorek and his siblings[5] against Bronislawa Kosiorek seeking (1) a judgment declaring the deed transferring ownership of the property invalid and (2) a declaratory judgment that the marriage between Stanislaw Kosiorek and Bronislawa Kosiorek was invalid.

The case went to a judicial pretrial, and a court annexed mediation occurred in late 2005 or early 2006. Stanley Kosiorek and his siblings offered $25,000 in exchange for a return of the house to the estate. This offer was rejected, as Bronislawa Kosiorek sought to receive $45,000. On March 21, 2006, Matulis sent a letter to Stanley Kosiorek and his siblings detailing the options following the unsuccessful mediation. In this letter, Matulis stated that Bronislawa Kosiorek would not accept less than $45,000 in exchange for transferring

---

[3] Stanislaw Kosiorek died on May 16, 2004.

[4] Stanley Kosiorek testified that no one in his family knew Bronislawa Kosiorek or that his father had been married for a second time.

[5] Stanley Kosiorek was a plaintiff in both his individual capacity and as executor of the decedent's estate. The other plaintiffs were Kazimierz Kosiorek, John Kosiorek, Diane Reynolds, Helen Kosiorek, Teresa Caudillo, Krystyna Jacobson and Stanislaw Wisniewski.

the house to the estate. Ultimately, Matulis made the following recommendation: "It is my belief that if this matter could be settled along the lines recommended by Judge [Richard A.] Robinson and [Bronislawa Kosiorek] be paid no more than $40,000.00 that the settlement would be far and away in the best interests of the family."

A trial was scheduled to begin in early August, 2006. At some point prior to the trial date, Matulis learned that Stanley Kosiorek had filed an application with the Probate Court seeking permission to sell the house to his son. Matulis informed him that the estate could not sell an asset that it did not own. A few days later, Stanley Kosiorek informed Matulis that he and his siblings had decided to hire a different lawyer. Matulis filed a motion to withdraw his appearance and sent a final bill. For the work completed over a two year time period, Matulis' law firm was paid $7732 by the children of the decedent.

In June, 2006, Stanley Kosiorek hired the defendant to represent the estate in the action against Bronislawa Kosiorek. Stanley Kosiorek signed a fee agreement both in his individual capacity and as executor of the decedent's estate. The fee agreement consisted of two pages; however, Stanley Kosiorek was shown only the second page that he had signed. The first page of the agreement set forth the fee arrangement as follows: "It is agreed that the fee for legal services rendered by [the defendant] will be based on an hourly charge of $225.00 per hour or it will be contingent upon recovery of benefits and shall be ONE-THIRD of the gross judgment or settlement, [whichever] amount is greater." Stanley Kosiorek, not having seen the paragraph, believed that the defendant's fee would be calculated on a hourly basis of $250 per hour. The defendant was paid a retainer of $5000.[6]

[6] Kazimierz Kosiorek issued a check for $5000 to pay the defendant's retainer because, at that time, the estate had no money.

Stanley Kosiorek obtained the file from Matulis, provided it to the defendant, and informed the defendant of details regarding the unsuccessful mediation.

Prior to trial, the estate and Bronislawa Kosiorek settled the case. In exchange for $35,000, Bronislawa Kosiorek agreed to quitclaim the deed to the property to the estate.[7] The parties also exchanged mutual general releases.

After the estate became the owner of the property, it entered into a sales agreement with Stanley Kosiorek's son and daughter-in-law. Although they agreed to purchase the property for $170,000, the son and daughter-in-law were unable to obtain a mortgage. To complete this transaction, the estate raised the price of the property to $212,500. Stanley Kosiorek and his siblings agreed to make a gift of equity of $42,500 to facilitate the sale of the property. Following approval of this transaction by the Probate Court, the defendant prepared a deed to transfer the property in exchange for $212,500. At the closing on December 21, 2006, the estate received $155,300.82.

Five days later, Stanley Kosiorek went to the defendant's office and received a disbursement letter. The defendant calculated his fees as follows: the value of the property was $257,000[8] and therefore his fee was one third of that amount, or $85,665.81, plus a probate fee of $1004.99, less a courtesy discount of $14,832.48 and less a retainer of $5000 for a total due to the defendant of $66,838.32. This amount was subtracted from the net proceeds of the closing and paid to the defendant, thus leaving the estate with $88,462.50. Stanley

[7] Kazimierz Kosiorek issued a check for $35,000 to the estate to fund the payment to Bronislawa Kosiorek.

[8] This amount came from a comparative market analysis prepared for Bronislawa Kosiorek.

Kosiorek had expected to receive $155,300 and to pay the defendant at a later date.

Stanley Kosiorek left the defendant's office "[s]peechless and stunned . . . ." He spoke with Kazimierz Kosiorek and then scheduled a meeting with the defendant. The defendant failed to appear at this meeting, and Stanley Kosiorek obtained new counsel. In a letter sent to the defendant, the new attorney, William J. Sweeney, Jr., indicated that he been retained to represent the estate with respect to the lawsuit against Bronislawa Kosiorek as well as any and all matters in the Probate Court. The letter requested the defendant to turn the file over, and advised that there would be claims against the defendant for legal and ethical breaches, namely, settling the lawsuit of the estate without Probate Court approval and charging an unreasonable fee. Finally, the letter requested that the fees retained by the defendant be placed in escrow.

Stanley Kosiorek filed an inventory and accounting in the Probate Court on behalf of the estate. In the administrative expenses, he listed the defendant's fee of $70,833.33. In January, 2007, a hearing was held regarding the defendant's fee. In May, 2007, the Probate Court issued a decree disallowing the defendant's fee, finding it excessive and unreasonable.[9] The Probate Court determined that the defendant was entitled to a fee of $15,000, plus $1000 for expenses. Accordingly, the Probate Court ordered the defendant to restore $54,833.33 to the estate. No appeal was taken from the decree of the Probate Court.

On July 6, 2007, the plaintiff filed an application for a prejudgment remedy to secure $54,833.33 of the defendant's assets to prevent him from fraudulently transferring or disposing of assets. The court granted this

[9] During these proceedings, the defendant provided the estate with an amended disbursement letter stating that he was entitled to one third of the $212,500, rather than the $257,000 he had initially used to calculate

application on December 20, 2007. On December 28, 2007, the plaintiff commenced this action. On September 17, 2008, the plaintiff, pursuant to General Statutes § 52-102, moved to cite in 122 Main Street as a party defendant. The court granted this motion on December 12, 2008.

On October 9, 2009, the plaintiff filed a revised nine count complaint. Specifically, it alleged the following causes of action against the defendant: (1) breach of contract, (2) breach of good faith and fair dealing, (3) unjust enrichment, (4) breach of fiduciary duty, (5) violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and (6) civil conversion in violation of General Statutes § 52-564. The plaintiff also alleged two counts against 122 Main Street: (1) fraudulent conveyance and (2) violation of the Uniform Fraudulent Transfer Act, General Statutes § 52-552a et seq. The defendant responded with an answer, special defenses and a counterclaim. With respect to the two counts directed against it, 122 Main Street filed an answer.

Both the defendant and 122 Main Street filed motions for a directed verdict. The court concluded that the plaintiff had failed to present proof required to prevail on the two causes of action relating to 122 Main Street and therefore directed the verdict in its favor. The court reserved judgment on the defendant's motion. The jury returned a verdict in favor of the plaintiff with respect to all five counts. Additionally, the jury found that the plaintiff was entitled to punitive damages and attorney's fees under the CUTPA count, and 10 percent interest as to the civil conversion count. The jury awarded damages in the amount of $54,833.33. In accordance with this verdict, the court calculated the interest award to

his fee. The defendant, however, correspondingly reduced his "courtesy discount" to $999.30.

be $20,754.74 for a subtotal of $75,587.74. The court then trebled that amount for a total damages award of $226,762.20.

The plaintiff then filed a motion for punitive damages and attorney's fees pursuant to the CUTPA count. The court declined to award any punitive damages. The court did, however, award attorney's fees in the amount of $68,011.50 and costs in the amount of $3684.59, for a total of $71,696.09. The total amount awarded to the plaintiff was $298,458.29. These appeals followed. Additional facts will be set forth as necessary.

## I

## DEFENDANT'S APPEAL

The defendant first claims that the court improperly determined that Stanley Kosiorek, individually, was not a necessary and indispensable party. Specifically, he argues that because his fee was earned after the death of Stanislaw Kosiorek, Stanley Kosiorek personally incurred the debt caused by the defendant's disallowed legal fees. In other words, according to the defendant, Stanley Kosiorek "must personally reimburse the estate for the disallowed fee or litigate the issue of the fees with the defendant, which he did not do." We are not persuaded.

On April 29, 2009, the defendant filed a motion to implead Stanley Kosiorek, individually, pursuant to Practice Book § 10-11.[10] The court denied this motion without comment on May 20, 2009. At no point did the defendant file a motion to strike pursuant to Practice

---

[10] Practice Book § 10-11 (a) provides in relevant part: "A defendant in any civil action may move the court for permission as a third party plaintiff to serve a writ, summons and complaint upon a person not a party to the action who is or may be liable to such defendant for all or part of the plaintiff's claim against him or her. . . ."

Book § 10-39.[11] "[T]he failure to join an indispensable party is not a [subject matter] jurisdictional defect. . . . Except as provided in Sections 10-44 and 11-3 no action shall be defeated by the nonjoinder . . . of parties. . . . Practice Book § 9-19. Additionally, [a]s set forth in Section 10-39, the exclusive remedy for nonjoinder of parties is by motion to strike." (Citation omitted; internal quotation marks omitted.) *Bauer* v. *Souto*, 277 Conn. 829, 838–39, 896 A.2d 90 (2006); see also *George* v. *St. Ann's Church*, 182 Conn. 322, 325, 438 A.2d 97 (1980) (filing of motion to strike is exclusive remedy to nonjoinder of indispensable parties).

This court has stated that "when an action cannot be disposed of properly on its merits because of the absence of an indispensable party, the defect is not waivable and can be addressed by this court even if not timely raised by the parties. See *W. G. Glenney Co.* v. *Bianco*, 27 Conn. App. 199, 202–203, 604 A.2d 1345 (1992); *Gaudio* v. *Gaudio*, 23 Conn. App. 287, 305, 580 A.2d 1212, cert. denied, 217 Conn. 803, 584 A.2d 471 (1990). Parties are considered indispensable when they not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such condition that its final [disposition] may be . . . inconsistent with equity and good conscience. . . . Indispensable parties must be joined

---

[11] Practice Book § 10-39 provides in relevant part: "(a) Whenever any party wishes to contest . . . (3) the legal sufficiency of any such complaint, counterclaim or cross complaint, or any count thereof, because of the absence of any necessary party or, pursuant to Section 17-56 (b), the failure to join or give notice to any interested person . . . that party may do so by filing a motion to strike the contested pleading or part thereof.

"(b) A motion to strike on the ground of the nonjoinder of a necessary party or noncompliance with Section 17-56 (b) must give the name and residence of the missing party or interested person or such information as the moving party has as to the identity and residence of the missing party or interested person and must state the missing party's or interested person's interest in the cause of action."

because due process principles make it essential that [such parties] be given notice and an opportunity to protect [their] interests by making [them] a party to the [action]. . . . Necessary parties, in contrast, are those [p]ersons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. . . . [B]ut if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties." (Internal quotation marks omitted.) *Demarest* v. *Fire Dept.*, 76 Conn. App. 24, 28, 817 A.2d 1285 (2003).

The defendant appears to argue that Stanley Kosiorek, individually, is liable to the estate for the defendant's fee that the Probate Court disallowed. Aside from general citations to a Connecticut probate treatise, the defendant fails to demonstrate why Stanley Kosiorek, individually, is a necessary and indispensable party to this litigation. Stanley Kosiorek, acting in his capacity as executor of the estate, sued the defendant to recover the legal fees determined to be excessive by the Probate Court. It is axiomatic that probate fiduciaries may commence legal action in their representative capacity. See R. Folsom, Connecticut Estates Practice Series: Probate Litigation in Connecticut 2d (2011) § 4:1. In other words, Stanley Kosiorek, acting on behalf of the estate, properly filed suit against the individual responsible to the estate for missing funds. If, hypothetically, Stanley Kosiorek were to breach his duty to the estate and withhold the funds recovered by this lawsuit, then the estate would have a claim against Stanley Kosiorek, individually. On the facts of this record, however, we are not

persuaded by the defendant's claim that Stanley Kosiorek, individually, was a necessary and indispensable party to this action.

## II

The defendant next claims that the court improperly denied his motion for a directed verdict. Specifically, he argues that (1) expert testimony was required as to the issue of whether the legal fees charged were reasonable, (2) the plaintiff failed to prove damages, (3) there was no evidence to support the CUTPA count and (4) there was no evidence to support the civil conversion count. We are not persuaded.[12]

"Our standard of review of the court's refusal to grant [motions for directed verdicts and to set aside verdicts] requires us to consider the evidence in the light most favorable to the prevailing party, according particular weight to the congruence of the judgment of the trial judge and the jury, who saw the witnesses and heard their testimony. . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached [its] conclusion. . . . While it is the jury's right to draw logical deductions and make reasonable inferences from the

---

[12] As a result of our conclusions regarding these issues, we need not address the defendant's claims regarding the breach of fiduciary duty and breach of good faith and fair dealing counts. Cf. *Green* v. *Yankee Gas Corp.*, 120 Conn. App. 804, 805, 993 A.2d 982 (2010) ("[t]he logic underlying the [general verdict] rule is that [w]here there was an error free path available to the jury to reach its verdict, and no special interrogatories were submitted showing which road the jury went down, any judgment rendered on such a verdict must be affirmed" [internal quotation marks omitted]); *Sturgeon* v. *Sturgeon*, 114 Conn. App. 682, 687, 971 A.2d 691 (same), cert. denied, 293 Conn. 903, 975 A.2d 1278 (2009). In this case, the award of damages contained in the judgment is founded on the jury's conclusions with respect to the CUTPA and civil conversion counts. Because we conclude that there is no error with respect to these counts, we need not consider the defendant's claims with respect to the other causes of action set forth in the operative complaint.

facts proven . . . it may not resort to mere conjecture and speculation. . . . If the evidence would not reasonably support a finding of the particular issue, the trial court has a duty not to submit it to the jury. . . . Our standard of review, where the trial court's action on a motion to set aside a verdict is challenged, is whether the trial court clearly abused its discretion. . . . The decision to set aside a verdict is a matter within the broad legal discretion of the trial court and it will not be disturbed unless there has been a clear abuse of that discretion." (Internal quotation marks omitted.) *Sutcliffe* v. *FleetBoston Financial Corp.*, 108 Conn. App. 799, 811, 950 A.2d 544 (2008).

## A

The defendant first argues that expert testimony was required on the issue of his legal fees. Specifically, he contends that the issue of the fees charged in this case was outside the common knowledge of the members of the jury, and, therefore, expert testimony was required. The plaintiff counters that the court properly determined that, under the circumstances of this case, expert testimony was not required. We agree with the plaintiff.[13]

Underlying the various causes of actions set forth in the revised complaint was the need for the jury to determine whether the legal fees charged to the estate were reasonable.[14] Because this determination is

---

[13] We employ the plenary standard of review with respect to this claim. See *St. Onge, Stewart, Johnson & Reens, LLC* v. *Media Group, Inc.*, 84 Conn. App. 88, 92, 851 A.2d 1242, cert. denied, 271 Conn. 918, 859 A.2d 570 (2004); see also *Ackerly & Brown, LLP* v. *Smithies*, 109 Conn. App. 584, 587–88, 952 A.2d 110 (2008) (issue of whether expert testimony required reviewed under plenary standard).

[14] In order to assess the reasonableness of fees, several factors must be considered, including the time and labor involved, the novelty and difficulty of the questions presented and the customary fee charged in the locality. *St. Onge, Stewart, Johnson & Reens, LLC* v. *Media Group, Inc.*, 84 Conn. App. 88, 93, 851 A.2d 1242, cert. denied, 271 Conn. 918, 859 A.2d 570 (2004).

beyond the experience of an ordinary fact finder, expert testimony generally is required. *Celentano* v. *Grudberg*, 76 Conn. App. 119, 126, 818 A.2d 841, cert. denied, 264 Conn. 904, 823 A.2d 1220 (2003). "The general rule does not, however, apply to cases where there is present such an obvious and gross want of care and skill that the neglect is clear even to a layperson." (Internal quotation marks omitted.) *St. Onge, Stewart, Johnson & Reens, LLC* v. *Media Group, Inc.*, 84 Conn. App. 88, 95, 851 A.2d 1242, cert. denied, 271 Conn. 918, 859 A.2d 570 (2004). We expressly have held that "the need to present expert testimony in collection cases is best decided, not by a bright line rule, but by careful examination of the circumstances of each particular case." Id., 96.

We agree with the trial court that expert testimony was not required in this case. The jury heard testimony from Matulis, who had worked on the dispute between the estate and Bronislawa Kosiorek for over two years, had negotiated a settlement that was $10,000 more than the one eventually achieved by the defendant and had charged the estate approximately $7700. The jury also was presented with the decree of the Probate Court, which determined that the defendant's fee was unreasonable.[15] Under the unique circumstances of this case,

[15] In *Disciplinary Counsel* v. *Smigelski*, 124 Conn. App. 81, 97, 4 A.3d 336 (2010), cert. denied, 300 Conn. 906, 12 A.3d 1004, cert. denied,    U.S.    , 132 S. Ct. 101, 181 L. Ed. 2d 28 (2011), we noted that "in *Gaynor* v. *Payne*, 261 Conn. 585, 598, 804 A.2d 170 (2002), our Supreme Court held that courts of general jurisdiction must give preclusive effect to Probate Court decrees adjudicating the validity of an executor's accounting for his performance of his duties to the estate. Accordingly, in this case, the court was required to take into account the Plainville Probate Court's adjudication of the fee to which the defendant was entitled for his services for Stanley Kosiorek as executor of the Kosiorek estate."

We also noted that "[i]t is axiomatic that, to collect a contingent fee for services rendered, an attorney must establish a nexus between fee and service. In this case, there is no such nexus between the defendant's services and the market value, however calculated, of the Kosiorek estate." *Disciplinary Counsel* v. *Smigelski*, supra, 124 Conn. App. 90.

we conclude that the plaintiff was not required to present expert testimony with respect to the issue of the reasonableness of the defendant's fees for legal services.

### B

The defendant next argues that the plaintiff failed to prove damages. Although the defendant's claims are not entirely clear from his brief, he appears to claim that (1) the plaintiff failed to present expert testimony as to the amount of damages and the duty of attorneys to charge only reasonable fees, (2) the plaintiff should have been estopped from claiming damages after having received the benefits of the defendant's legal services and (3) because the plaintiff acknowledged a valid contract, the terms of the contract, including the issue of legal fees, must also be valid. We are not persuaded.

As we have noted, the plaintiff introduced evidence, via the Probate Court decree, that a reasonable fee in the present case was $15,000, plus $1000 for expenses. The defendant had paid himself a fee of $65,833.33. The defendant had been paid a $5000 retainer, and, therefore, the estate was damaged in the amount of $54,833.33. Additionally, we note that "[a] fee agreement is not self-executing. It does not and cannot authorize an attorney to violate his fiduciary obligation to his client." *Disciplinary Counsel* v. *Smigelski*, 124 Conn. App. 81, 89, 4 A.3d 336 (2010), cert. denied, 300 Conn. 906, 12 A.3d 1004, cert. denied,    U.S.    , 132 S. Ct. 101, 181 L. Ed. 2d 28 (2011). In other words, a valid contract would not relieve the defendant of his obligations to the estate. Therefore, his estoppel argument and his claim regarding the validity of the fees based on the existence of a contract must fail.

### C

The defendant next argues that there was no evidence to support the CUTPA count. Specifically, he contends

again that expert testimony was required to establish the unreasonable nature of his fees. We need not revisit this contention. The defendant also maintains that there were no allegations or proof of any misleading or unfair conduct. We are not persuaded.

"CUTPA provides in relevant part that [n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. General Statutes § 42-110b (a). Connecticut courts, when determining whether a practice violates CUTPA, will consider (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen). . . . Thus, a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy. . . . Whether a practice is unfair and thus violates CUTPA is an issue of fact. . . . The facts found must be viewed within the context of the totality of circumstances which are uniquely available to the trial court. . . . Additionally, our Supreme Court has stated that [a]ll three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Internal quotation marks omitted.) *Ulster Savings Bank* v. *28 Brynwood Lane, Ltd.*, 134 Conn. App. 699, 714–15, 41 A.3d 1077 (2012).

We now examine the scope of CUTPA in the context of the practice of law. In *Heslin* v. *Connecticut Law*

*Clinic of Trantolo & Trantolo,* 190 Conn. 510, 520–21, 461 A.2d 938 (1983), our Supreme Court concluded that not all aspects relating to the conduct of the profession of law were excluded from the purview of CUTPA. More recently, we explained: "In general, CUTPA applies to attorney conduct, but only as to the entrepreneurial aspects of legal practice. . . . Professional negligence, or malpractice, does not fall under CUTPA." (Citation omitted.) *Anderson* v. *Schoenhorn,* 89 Conn. App. 666, 674, 874 A.2d 798 (2005); see also *Haynes* v. *Yale-New Haven Hospital,* 243 Conn. 17, 34–35, 699 A.2d 964 (1997).

In the present case, the plaintiff presented evidence that the defendant failed to provide Stanley Kosiorek with the entire fee agreement or to explain the nature of the contingency agreement at the time it was executed. Additionally, there was evidence that the defendant had not kept accurate time records, paid himself an unreasonable fee and refused to return the disallowed fee to the estate. "A party seeking to recover damages under CUTPA must meet two threshold requirements. First, he must establish that the conduct at issue constitutes an unfair or deceptive trade practice. . . . Second, he must present evidence providing the court with a basis for a reasonable estimate of the damages suffered." (Internal quotation marks omitted.) *Anderson* v. *Schoenhorn,* supra, 89 Conn. App. 675. The plaintiff presented the required evidence, and this evidence related to the entrepreneurial aspects of legal practice. Accordingly, the court properly submitted the CUTPA claim for the jury's consideration.[16]

---

[16] The defendant also argues that the court improperly awarded punitive damages under CUTPA. The record does not support this claim. The court stated that "the conduct by the defendant is offensive and would qualify for an award of punitive damages. . . . Absent the jury's finding on the count of civil conversion, which provides for treble damages as well as the plaintiff's entitlement to attorney's fees under CUTPA, the court would surely make a specific award of punitive damages. *However, in light of the reasons set forth, the court will not award any further damages for the*

## D

The defendant next argues that there was no evidence to support the statutory theft count.[17] Specifically, he argues that the plaintiff "failed to prove by competent evidence that the fee as retained by the defendant is in fact the property of the [estate] or that the defendant had no right to retain such a fee." We are not persuaded.

"The elements that the plaintiffs must prove to obtain treble damages under the civil theft statute, § 52-564, are the same as the elements required to prove larceny, pursuant to General Statutes § 53a-119. . . . A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . . It must be shown that (1) there was an intent to do the act complained of, (2) the act was done wrongfully, and (3) the act was committed against an owner. . . . The essential cause of action is a wrongful exercise of dominion over personal property of another." (Citations omitted; internal quotation marks omitted.) *Sullivan* v. *Delisa*, 101 Conn. App. 605, 619–20, 923 A.2d 760, cert. denied, 283 Conn. 908, 928 A.2d 540 (2007); see also *Rana* v. *Terdjanian*, 136 Conn. App. 99, 113–14, 46 A.3d 175, cert. denied, 305 Conn. 926, 47 A.3d 886 (2012); M. Taylor & D. Krisch, Encyclopedia of Connecticut Causes of Action (2009) p. 106.

In the present case, the plaintiff presented evidence that the defendant wrongfully withheld $54,833.33. The estate is the owner of that money. Moreover, despite the defendant's assertion, the manner in which he assessed

---

*CUTPA claim."* (Emphasis added.) Accordingly, we need not review this claim because the court, in fact, did not award punitive damages pursuant to CUTPA.

[17] General Statutes § 52-564 provides: "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."

this fee was not valid; it was an unreasonable fee as determined by the Probate Court and later by the office of the disciplinary counsel.[18] There was ample evidence permitting the jury to reasonably and legally reach its conclusion regarding the statutory theft count, and, therefore, the court properly denied the defendant's motion for a directed verdict.

## III

The defendant next claims that the court improperly permitted the probate judge to testify as an expert witness. Specifically, he argues that "[a]llowing testimony of the judge here was error because it was clearly a back door attempt to provide an 'expert opinion' despite plaintiff's counsel's disingenuous statements to the contrary." He also contends that he was deprived of his right to cross-examination because he was not permitted to ask questions regarding the process of writing the judge's decision.

The following additional facts are necessary for our discussion. The defendant filed a motion in limine to preclude the testimony of the Honorable Heidi Famiglietti, judge of probate for the district of Plainville. Counsel for the plaintiff countered that Judge Famiglietti was there to testify as a fact witness, with respect to statements made by the defendant, as well as to her recollection of the probate proceedings. The court denied the defendant's motion without prejudice.

During her testimony, Judge Famiglietti stated that she wrote a memorandum of decision in conjunction with her decree as to the final accounting filed by Stanley Kosiorek. In this decree, Judge Famiglietti found that "the attorney fees [for the defendant] are excessive and unreasonable. A fee to [the defendant] of $15,000.00

---

[18] See *Disciplinary Counsel* v. *Smigelski,* supra, 124 Conn. App. 81.

plus $1,000.00 for reimbursement of costs is reasonable." During cross-examination, the defendant asked whether Judge Famiglietti had any assistance in writing her decision. The court sustained the plaintiff's objection, and permitted the defendant to make an offer of proof outside of the presence of the jury.

The defendant set forth the following: "I was at the Probate Court maybe a year or two ago, inspected the file, the entire file, and found several drafts of the memorandum of decision marked up and with the facts—facts as to [the] Probate Court administrator's office in Hartford." The trial court then determined that the question at issue, stated succinctly, was whether Judge Famiglietti had any assistance in writing her decision. The court sustained the objection and stated that "going behind a judge's decision . . . is just like the A number one thing that people are not allowed to do. I mean, that's going into the thought process of a judge in issuing a decision, and that is not something that is allowed ever, ever."

We have carefully reviewed the testimony of Judge Famiglietti. Her testimony was limited to that of a fact witness. She was not asked to provide expert testimony, nor did she offer any. This claim, therefore, is without merit.

As to the defendant's claim that the court improperly limited his cross-examination, we find it meritless. "The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . . Furthermore, [t]o establish an abuse of discretion, [the defendant] must show that the restrictions imposed upon [the] cross-examination were clearly prejudicial.

. . . In order to establish reversible error on an evidentiary impropriety, however, the defendant must prove both an abuse of discretion and a harm that resulted from such abuse." (Internal quotation marks omitted.) *Florian* v. *Lenge*, 91 Conn. App. 268, 286, 880 A.2d 985 (2005). Here, in its ruling, the trial court properly considered the sanctity of the judicial deliberative process.[19] The defendant has failed to establish that the preclusion of testimony as to Judge Famiglietti's decision-making process was an abuse of discretion.

[19] See, e.g., *In the Matter of Enforcement of a Subpoena*, 463 Mass. 162, 172–73, 972 N.E.2d 1022 (2012) ("[T]he need to protect judicial deliberations has been implicit in our view of the nature of the judicial enterprise since the founding. Consequently, we join other courts, State and Federal, that, when faced with attempts by third parties to extract from judges their deliberative thought processes, have uniformly recognized a judicial deliberative privilege. See [*Matter of Certain Complaints under Investigation by an Investigating Committee of the Judicial Counsel of the Eleventh Circuit*, 783 F.2d 1488, 1517–20 (11th Cir.), cert. denied, 477 U.S. 904, 106 S. Ct. 3272, 91 L. Ed. 2d 562 (1984)]; *Thomas* v. *Page*, 361 Ill. App. 3d 484, 491, [837 N.E.2d 483 (2005)]; *In re Cohen's Estate*, 105 Misc. 724, [726–27, 174 N.Y.S. 427 (Surrogate's Ct. 1919)]; *Leber* v. *Stretton*, [928 A.2d 262, 270 (Pa. Super. 2007), appeal denied, 596 Pa. 733, 945 A.2d 172 (2008)]; *State ex rel. Kaufman* v. *Zakaib*, 207 W. Va. 662, 670, 535 S.E.2d 727 [2000]. See also *United States* v. *Morgan*, 313 U.S. 409, 422, 61 S. Ct. 999, 85 L. Ed. 1429 [1941] [mental processes of judge cannot be subjected to scrutiny; '[s]uch an examination of a judge would be destructive of judicial responsibility']; *Grant* v. *Shalala*, 989 F.2d 1332, 1344 [3d Cir. 1993] [noting threat to administrative law judges and serious interference with ability to decide cases solely on evidence and law if thought process subject to subsequent inquiry; '[i]t has long been recognized that attempts to probe the thought and decision making processes of judges . . . are generally improper']; *Nixon* v. *Sirica*, 487 F.2d 700, [740–42] [D.C. Cir. 1973] [MacKinnon, J., concurring in part and dissenting in part] [source of judicial privilege 'rooted in history and gains added force from the constitutional separation of powers']. To the extent that '[e]xpress authorities sustaining [a judicial privilege] are minimal,' it is 'undoubtedly because its existence and validity has been so universally recognized.' [Id., 740]. See [C.] Sorenson, Jr., Are Law Clerks Fair Game? Invading Judicial Confidentiality, 43 Val. U. L. Rev. 1, 66–67 [2008] ['[t]he relatively small amount of attention to the privilege in case law and secondary sources should not be attributed to the novelty or tenuousness of the privilege']; [R. Catz & J. Lange], Judicial Privilege, 22 Ga. L. Rev. 89, 115 [1987] ['[i]n two hundred years, few have discussed the [judicial] privilege and none have challenged it'].").

IV

The defendant next claims that the court improperly instructed the jury. Specifically, he argues that the court "improperly failed to adapt the jury charge to the issues, pleadings and evidence introduced at trial. The jury instructions are wrong in toto." Because of the inadequacy of his analysis of this audaciously expansive claim and the evidence before the jury, we are not convinced.

"Our standard of review concerning claims of instructional error is well settled. [J]ury instructions must be read as a whole and . . . are not to be judged in artificial isolation from the overall charge. . . . The whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict . . . . The trial court must adapt its instructions to the issues raised in order to give the jury reasonable guidance in reaching a verdict and not mislead them. . . . Claims of error addressed to the [jury] charge are tested by the pleadings and by the evidence . . . . The court has a duty to submit to the jury no issue upon which the evidence would not reasonably support a finding. . . . The court should, however, submit to the jury all issues as outlined by the pleadings and as reasonably supported by the evidence." (Citation omitted; internal quotation marks omitted.) *Rua* v. *Kirby*, 125 Conn. App. 514, 516–17, 8 A.3d 1123 (2010).

In his brief, the defendant sets forth certain general principles regarding jury instructions. He then argues that the court's instructions failed to guide the jury because the instructions failed to apply the general rules of law to the particular facts of this case. The defendant, however, has not provided any citation or legal analysis to support this contention. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an

inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Dreambuilders Construction, LLC* v. *Diamond,* 121 Conn. App. 554, 564, 997 A.2d 553 (2010); see also *Chase Home Finance, LLC* v. *Fequiere,* 119 Conn. App. 570, 580, 989 A.2d 606 ("mere conclusory assertions regarding a claim with no mention of relevant authority and minimal or no citations from the record will not suffice" [internal quotation marks omitted]), cert. denied, 295 Conn. 922, 991 A.2d 564 (2010).[20]

The defendant also argues that the court improperly "instructed the jury on the rules of professional conduct governing determination of reasonableness of attorney's fees." Specifically, he maintains that there was no evidence for the jury to determine whether his fee was reasonable. As previously stated, this claim must fail. The trial court was required to give preclusive effect to the decree of the Probate Court. See *Disciplinary Counsel* v. *Smigelski,* supra, 124 Conn. App. 97; see also *Gaynor* v. *Payne,* 261 Conn. 585, 598, 804 A.2d 170 (2002). Additionally, there was evidence for the jury to compare the work and fees charged by the defendant and Matulis. For these reasons, we conclude that the defendant's challenge to the instructions given to the jury must fail.

V

The defendant's final claim is that the court improperly precluded certain testimony from his expert witness, Louis Evjen, a licensed real estate appraiser. He appears to argue that the court improperly prevented Evjen from offering testimony about a second appraisal he had performed in September, 2006, and that the court

---

[20] To the extent that the defendant challenges other aspects of the court's instructions, we decline to review them on the basis of an inadequate brief.

improperly asked Evjen about the difference between a comparative market analysis and an appraisal.

The following facts are necessary for our discussion. On March 15, 2010, the defendant disclosed Evjen as an expert as required by Practice Book § 13-4 (b) (1). The defendant indicated that Evjen would offer his expert opinion that the fair market value of the property was $248,000, as of August 14, 2006. The court permitted Evjen to provide his expert opinion regarding the value of the property.

The defendant then attempted to have Evjen testify about an appraisal completed in September, 2006, that listed the value of the property as $254,000. Counsel for the plaintiff objected on the ground that the appraisal was not disclosed pursuant to Practice Book § 13-4, and, therefore, it should not be admitted into evidence. The court ruled that this area had not been disclosed properly, and determined that Evjen was not permitted to testify about the September, 2006 appraisal.

After the parties had completed their examination of Evjen, the court asked him about the difference between a comparative market analysis and an appraisal. Evjen responded: "A comparative market analysis usually takes into consideration a property on the market. That's typical for a real estate—real estate agent to give you a market analysis, where an appraiser really is only dealing with the history or the sales from that neighborhood unless there's extenuating circumstances." He also explained that banks generally did not rely on comparative market analysis. Neither party had any follow up questions for Evjen following his colloquy with the court.

We begin by setting forth our standard of review. "[T]he trial court has wide discretion in ruling on the

admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. . . . Even if a court has acted improperly in connection with the introduction of evidence, reversal of a judgment is not necessarily mandated because there must not only be an evidentiary [impropriety], there also must be harm." (Internal quotation marks omitted.) *Szczycinska* v. *Acampora*, 125 Conn. App. 474, 478, 10 A.3d 531 (2010).

"Practice Book § 13-4 plainly requires a plaintiff to disclose: (1) the name of the expert witness; (2) the subject matter on which the expert is expected to testify; (3) the substance of the facts and opinions to which the expert is expected to testify; and (4) a summary of the ground for each opinion." (Internal quotation marks omitted.) *Klein* v. *Norwalk Hospital*, 299 Conn. 241, 251, 9 A.3d 364 (2010). The defendant failed to disclose that Evjen would offer expert testimony regarding the September, 2006 appraisal. The court therefore did not abuse its discretion in precluding testimony regarding that subject.

With respect to the defendant's claim that the court improperly questioned Evjen regarding the difference between a comparative market analysis and an appraisal, we decline to review this unpreserved evidentiary claim. The defendant failed to object to the court's questions. "It is well settled that this court will not entertain claims of evidentiary error that were not distinctly raised before the trial court." *Wilderman* v. *Powers*, 110 Conn. App. 819, 828, 956 A.2d 613 (2008).

## VI

### PLAINTIFF'S CROSS APPEAL

In his cross appeal, the plaintiff claims that the court improperly directed the verdict in favor of 122 Main Street. Specifically, he argues that there was sufficient evidence for the jury to conclude that the transfer of the defendant's interest in 122 Main Street was done with the fraudulent intent to deprive the estate with access to his assets. We agree that the court improperly directed the verdict with respect to the statutory claim of fraudulent conveyance, but disagree with respect to the common-law claim.

The following facts are necessary for the resolution of this issue. The plaintiff's revised complaint set forth two causes of action against 122 Main Street.[21] Specifically, in count seven, the plaintiff claimed that the defendant fraudulently conveyed his interest in 122 Main Street to Julius J. Janusz and John T. Glowka. On December 20, 2007, the court entered a prejudgment remedy in the amount of $54,833.33 against the defendant. At that time, he was the sole owner of 122 Main Street, LLC. A few weeks later, the defendant changed the name of the entity to 122 Main Street Associates, LLC, and diluted his interest by adding Janusz and Glowka as members. The plaintiff alleged that this transfer was done without fair and sufficient consideration, and was done with the intent to hinder, delay and defraud the plaintiff, to protect and preserve the defendant's interest in the property and to prevent and hinder the plaintiff from collecting and receiving the proceeds due to the plaintiff as a result of the defendant's actions. In count eight of the revised complaint,

---

[21] The defendant described the property owned by 122 Main Street as an "office building with a parking lot attached to it for thirty-five cars. So, actually it consists of two parcels of real property. One is 21 Walnut Street, one is 122 Main Street, which is a corner of Walnut and Main."

the plaintiff asserted these allegations in the context of a violation of § 52-552e.[22] For count seven, the plaintiff sought to impose a constructive trust on $54,833.33, avoidance of the transfer or obligation to the extent necessary to satisfy his claim, an accounting of the money converted, and such other equitable relief as needed. For count eight, the plaintiff sought money damages, avoidance of the transfer or obligation to the extent necessary to satisfy his claim, an attachment or other provisional remedy against the asset transferred and an injunction against further disposition of the asset transferred.

The defendant testified during cross-examination that 122 Main Street, LLC, was a single member limited liability company from July 18, 2001, until January, 2008. The defendant also testified that a prejudgment remedy was entered against him in the amount of $54,833.33 on December 20, 2007. At this time the defendant had lost the fees he had paid himself from the estate in a "bad deal," and 122 Main Street was his major asset. He then transferred two thirds of his interest to Janusz and Glowka. Both were tenants of 122 Main Street, and there was no evidence that they were aware of the prejudgment remedy entered against the defendant. Each paid the defendant $25,000 in cash and gave him a note for $25,000 in exchange of a one-third share.

On October 8, 2010, 122 Main Street filed a motion for a directed verdict, and the court heard from the

[22] General Statutes § 52-552e (a) provides: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."

parties on October 12, 2010. It argued that the allegations in the complaint solely were against the defendant. It further claimed that Janusz and Glowka paid reasonable value for their interest. The plaintiff countered that 122 Main Street had failed to satisfy its burden to prove that a reasonable value had been paid. The plaintiff further argued that there existed questions of fact as to whether the transfer was made with a fraudulent intent and that the matter therefore should go to the jury to decide.

On October 13, 2010, the court granted the motion for a directed verdict filed by 122 Main Street. The court "determined that the plaintiff has failed to present the proof that the law requires to prevail on the two claims against [122 Main Street]. There was no evidence presented as to the fair market value of the building, so any determination by the jury that the consideration was deficient would be pure speculation."

We begin with our standard of review. "Whether the evidence presented by the plaintiff was sufficient to withstand a motion for a directed verdict is a question of law, over which our review is plenary. . . . Directed verdicts are not favored. . . . A trial court should direct a verdict only when a jury could not reasonably and legally have reached any other conclusion. . . . In reviewing the trial court's decision to direct a verdict in favor of a defendant we must consider the evidence in the light most favorable to the plaintiff. . . . Although it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and speculation. . . . A directed verdict is justified if . . . the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party. . . . This court has emphasized two additional points with respect to motions to set aside a verdict that are equally applicable to motions for a directed verdict: First, the

plaintiff in a civil matter is not required to prove his case beyond a reasonable doubt; a mere preponderance of the evidence is sufficient. Second, the well established standards compelling great deference to the historical function of the jury find their roots in the constitutional right to a trial by jury." (Internal quotation marks omitted.) *Demiraj* v. *Uljaj*, 137 Conn. App. 800, 804–805, 50 A.3d 333 (2012).

"A party alleging a fraudulent transfer or conveyance under the common law bears the burden of proving either: (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligations or (2) that the conveyance was made with a fraudulent intent in which the grantee participated. . . . The party seeking to set aside a fraudulent conveyance need not satisfy both of these tests. . . . These are also elements of an action brought pursuant to General Statutes §§ 52-552e (a) and 52-552f (a)." (Citations omitted; internal quotation marks omitted.) *Certain Underwriters at Lloyd's, London* v. *Cooperman*, 289 Conn. 383, 394–95, 957 A.2d 836 (2008); see also *Wieselman* v. *Hoeniger*, 103 Conn. App. 591, 596, 930 A.2d 768, cert. denied, 284 Conn. 930, 934 A.2d 245 (2007); *Litchfield Asset Management Corp.* v. *Howell*, 70 Conn. App. 133, 140–41, 799 A.2d 298, cert. denied, 261 Conn. 911, 806 A.2d 49 (2002); see generally M. Taylor & D. Krisch, supra, pp. 20, 112–13.

On appeal, the plaintiff argues that the defendant improperly transferred two thirds of 122 Main Street "in an effort to dilute his biggest asset." The plaintiff contends that the court improperly directed the verdict because the jury reasonably and legally could have concluded that this transfer was done with fraudulent intent. We agree with the plaintiff with respect to the statutory claim of a fraudulent transfer.

In this case, the defendant was the transferor, Janusz and Glowka were the transferees, and the interest in

122 Main Street, initially owned 100 percent by the defendant, was the subject of the conveyance.[23] After reviewing the record, we see no evidence that Janusz and Glowka participated in a fraudulent conveyance. While there was evidence for the jury to conclude that the defendant fraudulently conveyed his two-thirds interest to Janusz and Glowka, we have not found, nor has the plaintiff referred to, any evidence that the two grantees participated in the defendant's scheme. See General Statutes § 52-552e (b) (1), (4) and (10).[24] Janusz testified that he and Glowka, after becoming aware of

[23] We disagree with the argument by 122 Main Street that it should not have been named a defendant in this case. On December 12, 2008, the court granted the plaintiff's motion to cite in 122 Main Street as a party defendant. The plaintiff's complaint alleges that 122 Main Street, as controlled by the defendant, was part of a fraudulent conveyance. The plaintiff also directs us to General Statutes § 34-134, which provides: "A member or manager of a limited liability company is not a proper party to a proceeding by or against a limited liability company solely by reason of being a member or manager of the limited liability company, except where the object of the proceeding is to enforce a member's or manager's right against or liability to the limited liability company or as otherwise provided in an operating agreement." For these reasons, we are not persuaded by 122 Main Street's claim.

[24] General Statutes § 52-552e (b) provides: "In determining actual intent under subdivision (1) of subsection (a) of this section, consideration may be given, among other factors, to whether: (1) The transfer or obligation was to an insider, (2) the debtor retained possession or control of the property transferred after the transfer, (3) the transfer or obligation was disclosed or concealed, (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit, (5) the transfer was of substantially all the debtor's assets, (6) the debtor absconded, (7) the debtor removed or concealed assets, (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred, (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred, (10) the transfer occurred shortly before or shortly after a substantial debt was incurred, and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor."

There was evidence that the defendant retained possession and control, albeit diminished, of 122 Main Street, he had been sued prior to the transfer of his 100 percent interest and that the transfer occurred shortly after he incurred a substantial debt.

the defendant's financial difficulties in 2006, approached him about becoming co-owners of the building. After reaching a purchase price agreeable to all three, the sale was completed. The evidence showed that Janusz was not aware of any claims against the defendant from the estate, and the defendant did not tell him about the prejudgment remedy entered against him.

At this point, we address the differences between the common-law cause of action for a fraudulent transfer and the statutory action under § 52-552e. In *Robinson* v. *Coughlin*, 266 Conn. 1, 9, 830 A.2d 1114 (2003), our Supreme Court noted that although the statute is largely an adoption and clarification of the standards of the common law of fraudulent conveyances, it is not a wholesale codification. See also *Hamrah* v. *Emerson*, Superior Court, judicial district of Fairfield, Docket No. CV-05-4012872 (August 20, 2009) (noting subtle differences in remedies between statutory and common-law actions).

In *Wieselman* v. *Hoeniger*, supra, 103 Conn. App. 591, this court identified a distinction between the statutory and common-law cause of action for fraudulent conveyance significant to this appeal. "[Section] 52-552e (a) provides in relevant part that [a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay or defraud any creditor of the debtor . . . . *Prior to the adoption of the act, the plaintiff had to prove (1) that the transferor had intent to defraud the creditor and (2) that the transferee shared in the transferor's fraudulent intent. . . . The plain language in § 52-552e addresses the fraudulent intent of the debtor and makes no mention of the fraudulent intent of the transferee.*" (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 598–99.

Guided by *Wieselman*, we conclude that the court properly granted the motion for a directed verdict with respect to the common-law cause of action for fraudulent transfer. There was no evidence that the conveyance was done for less than fair and reasonable consideration. Likewise, there was no evidence that either Janusz or Glowka, the transferees, actively participated in a fraudulent conveyance. The jury could not have reasonably or legally reached a verdict in favor of the plaintiff with respect to his claim of common-law fraudulent conveyance. The court, therefore, properly granted the motion for a directed verdict. With respect to the claim under § 52-552e, however, there is no requirement for a fraudulent intent with respect to the transferees. See id., 599. Because there was evidence for the jury to conclude that the defendant transferred his interest with an actual intent to hinder, delay or defraud the estate, a creditor of the defendant, we conclude that the court improperly granted the motion for a directed verdict with respect to the plaintiff's § 52-552e claim.[25]

The judgment is reversed only as to the granting of 122 Main Street's motion for a directed verdict as to the count of the revised complaint alleging a violation of § 52-552e and the case is remanded for further proceedings according to law. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[25] We note that the trial court did not discuss specifically this means of establishing a fraudulent transfer. Nevertheless, because the record reveals evidence that could support a finding that the transfer was done with a fraudulent intent, the motion for a directed verdict was granted improperly. See *Thomas* v. *West Haven*, 249 Conn. 385, 392, 734 A.2d 535 (1999), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d 99 (2000); *Beale* v. *Yale-New Haven Hospital*, 89 Conn. App. 556, 565–66, 874 A.2d 259 (2005).